## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| Emergent Fidelity Technologies Ltd, | ) |
|  | ) Case No. 23-_____  (___) |
| Debtor.[1] | ) |
|  | ) |

## DECLARATION OF ANGELA BARKHOUSE
## IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITION

I, Angela Barkhouse, declare under penalty of perjury:

1.      I am a Managing Director of Quantuma (Cayman) Limited, part of the Quantuma group, a financial, restructuring, and forensic advisory firm that operates in various locations around the world, including in the Caribbean.  I am resident in the Cayman Islands.  My colleague Toni Shukla of Quantuma (BVI) Limited (resident in the British Virgin Islands) and I are the Joint Provisional Liquidators (the "JPLs") of Emergent Fidelity Technologies Ltd (the "Debtor"), a company formed under the laws of Antigua and Barbuda.  We were appointed as JPLs for the Debtor by the Eastern Caribbean Supreme Court, High Court of Justice, Antigua and Barbuda (the "Antiguan Court") by an order dated December 5, 2022 (the "JPL Order").  As set forth in further detail below, I am authorized to submit this Declaration on behalf of the Debtor.

2.      On February 3, 2023 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing this case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), under the JPLs' direction.

---

[1] The Debtor in this Chapter 11 case is Emergent Fidelity Technologies Ltd, a company formed under the laws of Antigua and Barbuda with registration number 17532 as identified by the Antigua and Barbuda Financial Services Regulatory Commission.  The Debtor's principal place of business is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

3.      Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) information provided to me by my colleagues or third persons; (c) my review of relevant documents, including submissions in the Antiguan Court and in pending chapter 11 cases referenced below; and (d) my opinion based upon the foregoing and upon my experience dealing with distressed companies.

4.      I submit this Declaration to provide the Bankruptcy Court and other parties in interest with an overview of the Debtor's business and to describe the circumstances leading to the commencement of this Chapter 11 Case, which the JPLs believe is necessary to preserving the value of the Debtor's assets and ensuring that the claims of its creditors—which in theory could number in the tens of thousands, broadly coextensive with the creditors in *In re FTX Trading Limited*, No. 22-11068 (JTD) (Jointly Administered) (the "<u>FTX Cases</u>")—can be administered in a fair and orderly manner.

5.      The Debtor expects to file its Schedules and Statement of Financial Affairs within the time permitted by Local Rule 1007-1(b).  Any financial information provided below is unaudited and is subject to change based on the JPLs' further investigation into the Debtor's finances and affairs.

## JURISDICTION AND VENUE

6.      I am advised by counsel that this Bankruptcy Court has jurisdiction over the Chapter 11 Case because the Debtor's only known Assets (as defined below) are currently held in an account controlled by the United States Department of Justice (the "<u>DOJ</u>") in New York.  *See* Notice of Seizure, FTX Cases [D.I. 477].[2]  Prior to the DOJ seizing those Assets on or around

---

[2] This Bankruptcy Court may take judicial notice of matters of public record, including the FTX Cases pending in this District and the BlockFi Action (defined below) pending in the U.S. Bankruptcy Court for the District of New Jersey (the "<u>New Jersey Bankruptcy Court</u>").  *See In re Washington Mut. Inc.*, 741 F. App'x 88, 89 n.1 (3d Cir. 2018) (citing

January 6, 2023, they were held in an account in the Debtor's name at Marex Capital Markets, Inc. (f/k/a ED&F Man Capital Markets, Inc.) in New York. *See id.*

7. I am also advised by counsel that venue is proper for the Chapter 11 Case in this District because the Debtor is affiliated through its ownership by Sam Bankman-Fried ("SBF") with the chapter 11 debtors whose cases are administered jointly by this Bankruptcy Court in the FTX Cases (the "FTX Debtors").

8. The JPLs expect to request that the Bankruptcy Court oversee this Chapter 11 Case pursuant to a form of joint administration with the FTX Cases that is appropriate under the circumstances for the purpose of enhancing efficiency and without prejudicing the substantive rights of the Debtor, its creditors, or its other stakeholders.

### THE DEBTOR, ITS ASSETS, AND COMPETING CLAIMS TO THOSE ASSETS

9. The Debtor is 90% owned by SBF, who I understand also directly or indirectly owns the more than one hundred FTX Debtors, and 10% owned by Zixiao "Gary" Wang. SBF was listed as the Debtor's sole director on the Debtor's register of directors. The Debtor appears to have no employees.

10. The Debtor owns approximately 55 million shares of Robinhood Markets, Inc. (the "Robinhood Shares") and approximately $20.7 million cash, which is apparently proceeds from the sale of additional such shares (together with the Robinhood Shares, the "Assets"). As noted above, the Assets are currently under the control of the DOJ. The Debtor has no further assets or claims or other property of which I am aware, although the JPLs' investigation into these matters is ongoing.

---

*McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) and taking judicial notice of documents, "including matters of public record and judicial opinions")).

11.    The Debtor and its Assets are subject to numerous alleged claims and security interests, including those asserted by:

(i)    the Debtor's own creditors, whose ranks are yet to be determined but include, allegedly, at least one customer of the FTX Debtors, who initiated receivership proceedings against the Debtor (now superseded by the provisional liquidation) in the Antiguan Court on the basis of the allegation that his assets deposited with the FTX Debtors had been improperly used to fund FTX entities' purchases and other activities;

(ii)    one or more of the FTX Debtors with chapter 11 cases pending in this District, which have asserted that their automatic stay protects their property interest in the Assets;

(iii)    certain chapter 11 debtors in the *In re BlockFi Inc.* chapter 11 cases pending in the New Jersey Bankruptcy Court (collectively, "BlockFi"), which have asserted a security interest and apparently an ownership interest in the Assets;

(iv)    SBF, who apparently asserts an interest in the Assets as the 90% owner of the Debtor;

(v)    the DOJ, which I understand believes that the Assets may be the proceeds of criminal activity and should be held for the benefit of the victims thereof; and

(vi)    FTX Digital Markets Ltd. (in provisional liquidation), which has filed a reservation of rights[3] with respect to pending disputes over the Assets in the FTX Cases.

12.    As a result of these competing claims, there are numerous proceedings against or involving the Debtor in disparate forums, namely:

---

[3] *See Limited Response and Reservation of Rights of the Joint Provisional Liquidators of the Chapter 15 Debtor Regarding the Debtors' Motion to Enforce the Automatic Stay or, in the Alternative, Extend the Automatic Stay*, FTX Cases [D.I. 383].

(i)      receivership (initially) and provisional liquidation (currently) proceedings in the Antiguan Court, in which SBF, BlockFi, and the FTX Debtors to varying degrees are participating;

(ii)     a motion to apply the automatic stay to the Assets or to extend the automatic stay to the Debtor, filed by the FTX Debtors in the Bankruptcy Court but currently adjourned without date, in which the Debtor, BlockFi, and potentially others are interested parties.

(iii)    an adversary proceeding commenced by BlockFi against the Debtor and Marex in the New Jersey Bankruptcy Court, Adv. Pro. No. 22-19361 (MBK) (the "BlockFi Action"), in which the BlockFi official unsecured creditors' committee has intervened and SBF and the FTX Debtors may eventually intervene;

(iv)     several applications by SBF, joined in part by BlockFi, in the Antiguan Court; and

(v)      an *in rem* proceeding commenced by the DOJ against the Assets in the U.S. District Court for the Southern District of New York, in which I anticipate that numerous parties in interest will participate.

13.     The JPLs' duties are to the Debtor's creditors, whoever those creditors may be. Given the many parties claiming to be creditors or outright owners of the Debtor's Assets in proceedings in the U.S., the JPLs believe that chapter 11 protection is the only practical way to empower the Debtor to defend itself, the Assets, and its creditors' interests in the U.S.

14.     I assume the Court's familiarity with the DOJ's seizure of the Assets and the claims made in the FTX Cases regarding those Assets.  I summarize briefly below for the Court's benefit the Antiguan proceedings and the BlockFi Action.

### THE ANTIGUAN PROCEEDINGS

15.     On November 17, 2022, an FTX account holder and alleged creditor of the Debtor named Yonatan Ben Shimon filed a petition with the Antiguan Court seeking to impose a receivership over the shares of the Debtor.  On November 18, 2022, the Antiguan Court entered an order granting this relief, and appointed me and my colleague Ms. Shukla as receivers (the "Receivership Order").  A true copy of the Receivership Order is attached hereto as **Exhibit A**.

16.     On December 2, 2022, in our capacity as receivers, Ms. Shukla and I filed a petition with the Antiguan Court to wind up the Debtor under the provisions of the International Business Corporations Act, Cap. 222.  On December 5, 2022, the Antiguan Court entered the JPL Order. A true copy of the JPL Order is attached hereto as **Exhibit B**.

17.     The JPL Order directs the JPLs to "investigate the [Debtor's] affairs and to preserve the value of the [Debtor's] assets for the benefit of those entitled to them."  JPL Order ¶ 2.  The JPL Order authorizes the JPLs, in relevant part, to:

(i)      "bring, defend or take part in any civil, criminal or administrative action or proceeding in the name and on behalf of the [Debtor]," *id.* ¶ 3(b);

(ii)     "carry on the business of the [Debtor] as required for a[n] orderly liquidation," subject to Antiguan Court approval for the sale or encumbrance of assets or the settlement of creditor claims, *id.* ¶ 3(c);

(iii)    "do all acts and execute any documents in the name of the [Debtor]," *id.* ¶ 3(d); and

(iv)     "[r]etain attorneys and act in any foreign jurisdiction on behalf of the [Debtor] as permitted by the applicable foreign law, including commencing legal proceedings in their own names or in the name and on behalf of the [Debtor] for the

6

recognition of their appointment by this Court or for their appointment . . . by the foreign court, or for orders in aid of the [Debtor's] liquidation or for the assistance of the foreign court in carrying out of their duties as Liquidators, including but not limited to proceedings under Chapter 15 of the United States Bankruptcy Code[,]" *id.* ¶ 4(b).

18.     The JPL Order further directs that "[n]o suit, action or other proceeding be commenced or continued against the [Debtor] or in respect of its assets, except with the leave of the Court and subject to such terms as the Court may impose." *Id.* ¶ 8.[4]

19.     Since the JPL Order was entered, SBF and BlockFi have challenged the JPLs' appointment as JPLs and as receivers on various grounds.  On December 28, 2022, the Antiguan Court heard SBF's application to stay the Debtor's liquidation proceeding and suspend the JPLs' powers pending further challenges.  The Antiguan Court rejected this application and reaffirmed the JPLs' powers on the record (the "December 28th Order").  On January 25, 2023, the Antiguan Court heard SBF's application to lift the stay of the receivership proceeding stayed by paragraph 9 of the JPL Order.  The Antiguan Court again rejected the application.  On January 27, 2023, the Antiguan Court heard (i) the JPLs' petition to wind up the Debtor, (ii) BlockFi's application to stay the proceedings and (iii) SBF's application to adjourn the hearing on the JPLs' petition.  The Antiguan Court rejected BlockFi's application to stay the proceedings and SBF's application to adjourn the hearing.

20.     Certain of SBF's challenges remain pending and are scheduled to be heard as follows.  On January 27, 2023, the Eastern Caribbean Court of Appeal (the "Court of Appeal") *sua sponte* granted SBF's application for leave to appeal the December 28th Order (the "SBF

---

[4] As discussed below, despite appearing before and seeking relief from the Antiguan Court, BlockFi has disregarded this directive and continued to prosecute the BlockFi Action against the Debtor.

Appeal"). The JPLs believe that the ruling was premature and procedurally improper as the SBF Appeal was scheduled for January 31, 2023. The JPLs are seeking clarity on the scope and effect of that order.

21. On February 2, 2023, SBF filed an application for a stay of the JPLs' powers with the Court of Appeal, with the ultimate goal of attempting to regain control of the Debtor. The JPLs believe that SBF's application is baseless, and that SBF's goal of controlling the Debtor is not in the best interest of the Debtor or its stakeholders. SBF has been indicted by U.S. authorities and charged with, among other things, conspiring and committing wire fraud, commodities fraud, securities fraud, money laundering, and other related offenses against the customers, lenders and investors of the FTX Debtors, and the United States government.[5] SBF is a defendant in numerous civil actions by agencies of the U.S. government, alleging fraud and dishonest conduct resulting in harm to customers and investors of the FTX Debtors. SBF's closest business associates, Caroline Ellison and Zixiao "Gary" Wang, have pleaded guilty to criminal charges in connection with the FTX collapse. The JPLs, as fiduciaries for the Debtor, must investigate SBF and other SBF-controlled entities that may have been involved in fraudulent or illegal activities, in order to identify assets of the Debtor and potential claims held by the Debtor. All of the foregoing make SBF unable to carry out fiduciary duties to the Debtor or to its stakeholders, and make him unfit to carry out the duties of a debtor in possession under the U.S. law. As one example, SBF's conduct is at issue in the BlockFi Action, which means SBF has a significant conflict of interest in connection with the defense of that Action on behalf of the Debtor. Another example is that SBF, while under criminal indictment and facing the threat of significant civil liability for his

---

[5] *See*, *e.g.*, *United States v. Samuel Bankman-Fried*, Case No. 1:22-cr-00673 (LAK), D.I. 1 (S.D.N.Y. Dec. 9, 2022); *S.E.C. v. Samuel Bankman-Fried*, Case No. 1:22-cv-10501 (PKC), D.I. 1 (S.D.N.Y. Dec. 13, 2022); *C.F.T.C. v. Samuel Bankman-Fried*, 1:22-cv-10503 (PKC), D.I. 1 (S.D.N.Y. Dec. 13, 2022). The Debtor respectfully requests that the Bankruptcy Court take judicial notice of these proceedings as noted in footnote 2.

conduct, could not effectively communicate with the DOJ regarding the seizure of the Assets and could not effectively represent the Debtor in the forfeiture proceedings relating to those shares.

22.    Nonetheless, the JPLs' powers remain fully in effect as of the filing of this Chapter 11 Case.  Even in the unlikely event the JPLs' powers are successfully challenged, the JPLs expect the Antiguan Court would appoint replacement fiduciaries to continue managing the Debtor in its Antiguan liquidation and U.S. bankruptcy proceedings.

23.    The JPLs have therefore exercised what I believe is a sound exercise of business judgment in the advancement of their duties and authority conferred under the JPL Order to authorize and direct the commencement of this Chapter 11 Case for the purpose of preserving the value of the Assets for the benefit of those who hold allowed claims or interests against the Debtor or in the Assets.

## THE BLOCKFI ACTION

24.    On November 28, 2022—the same day as it filed for chapter 11 in the New Jersey Bankruptcy Court—BlockFi commenced the BlockFi Action against the Debtor and Marex.

25.    In the BlockFi Action, BlockFi alleges that: (i) under a certain Pledge Agreement, dated as of November 9, 2022 (the "Pledge Agreement"), the Debtor guaranteed to BlockFi certain undefined "payment obligations" owed by an unnamed "borrower" (which has subsequently been revealed to be Alameda Research Limited) and pledged the Robinhood Shares as security for these guaranty obligations, in exchange for BlockFi Lending LLC's and BlockFi International LLC's forbearance in favor of that unnamed borrower pursuant to a certain Amendment & Forbearance Agreement, dated as of November 9, 2022; and (ii) on November 9 or 10, 2022, the Debtor breached its obligations by failing to promptly deliver the Robinhood Shares to BlockFi, and on November 10, 2022, the Debtor breached its obligations by failing to honor BlockFi's call on the

guaranty after the borrower missed a payment.  BlockFi does not mention that the FTX Cases were filed the next day.

26.     In the BlockFi Action, BlockFi demands that the Robinhood Shares be delivered to it and seeks damages for breach of contract or quantum meruit.

27.     While the JPLs have not yet responded to BlockFi's complaint, there has already been significant motion practice in the BlockFi Action, including a motion by BlockFi to compel immediate turnover of the Robinhood Shares (the "BlockFi Turnover Motion").  On January 9, 2023, the New Jersey Bankruptcy Court denied the BlockFi Turnover Motion as moot, given the DOJ's seizure of those shares.

28.     The JPLs have evaluated the evidence available to them and have serious concerns regarding the legitimacy of BlockFi's asserted interests in the Robinhood Shares.  To begin with, the pledge and guaranty agreements the Debtor allegedly entered into with BlockFi appear to have been signed by Caroline Ellison.  The JPLs have seen no evidence that Ms. Ellison was ever an authorized signatory for the Debtor, and SBF himself has averred that she was not.[6]  In addition, the JPLs have seen no indication that the Debtor ever received any consideration in exchange for purportedly guarantying Alameda's indebtedness and pledging all of its assets to secure that guaranty—all for what appears to have been a 24-hour forbearance.  And, even if the guaranty and pledge were valid and enforceable, they appear to be garden-variety fraudulent transfers, avoidable under chapter 5 of the Bankruptcy Code.[7]

---

[6] See SBF's opposition to BlockFi Turnover Motion, BlockFi Action [D.I. 38] ("Caroline Ellison was [the Debtor's] only signatory to the Pledge Agreement, and she lacked any authority to bind [the Debtor].").

[7] While the JPLs have not yet reached any definitive conclusions on these points, they have raised these concerns in their filings with the New Jersey Bankruptcy Court in response to BlockFi's claims.

29.     BlockFi has also argued repeatedly and misleadingly that the JPLs' ongoing administration of the Antiguan Proceedings violates its automatic stay.  To date, the New Jersey Bankruptcy Court has not adopted this position.  To be clear, the JPLs have never asked the Antiguan Court to determine ownership or disposition of the Assets.  Nonetheless, BlockFi's counsel has threatened repeatedly to ask the New Jersey Bankruptcy Court to hold the JPLs held in contempt for fulfilling their obligations to the Antiguan Court and under the JPL Order.

30.     As noted above, the JPLs perceive significant deficiencies in BlockFi's position with respect to the Assets and, based on the information available to date, believe BlockFi's asserted interest may be unenforceable or avoidable on multiple grounds.  The JPLs are duty-bound to investigate and, if valid, take action with respect to these concerns.  Due to BlockFi's ongoing threats, however, the JPLs are concerned that any action in the Antiguan Proceeding even remotely related to the Assets will give BlockFi an excuse to seek sanctions in the New Jersey Bankruptcy Court.  This has imposed a significant burden on the JPLs in their efforts to protect the Debtor and its creditors.

31.     The JPLs are also concerned that neither BlockFi nor the other parties in interest (most of which are in their own insolvency proceedings) are likely to comply with any order issued by the Antiguan Court that they perceive as detrimental to their interests.

32.     For the foregoing reasons, the JPLs believe the Debtor requires the protection of this Bankruptcy Court and the powers accorded to a debtor under the Bankruptcy Code.

[*Signature page to follow*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: February 3, 2023

_____
Angela Barkhouse