# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Emergent Fidelity Technologies Ltd, | ) | Case No. 23-10149 (JTD) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

## DEBTOR'S OPPOSITION TO BLOCKFI'S MOTION TO DISMISS

Emergent Fidelity Technologies Ltd (the "Debtor"), by and through its undersigned proposed counsel, submits this brief, supported by the Declaration of John C. Goodchild, III attached hereto as **Exhibit A** and the Declaration of Angela Barkhouse filed on the petition date (ECF No. 3) (the "Barkhouse Declaration"), in opposition to the *Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case* (ECF No. 32) (the "Motion") filed by BlockFi Inc., BlockFi Lending LLC, and BlockFi International Ltd. (collectively, "BlockFi").

## PRELIMINARY STATEMENT

To perform their duties more effectively and efficiently, the court-appointed fiduciaries ordered to protect the Debtor's assets for the benefit of its stakeholders caused the Debtor to file a chapter 11 case in this Court. Given the circumstances, the Debtor's chapter 11 filing was resoundingly appropriate and clearly made in good faith.

The Debtor is 90% owned by Samuel Bankman-Fried ("SBF") and 10% owned by Gary Wang. The Debtor undisputedly holds title to shares in Robinhood Markets, Inc., and proceeds thereof worth about $600 million (the "Assets"). The Debtor purchased the Assets in early 2022

---

[1] The Debtor in this Chapter 11 case is Emergent Fidelity Technologies Ltd, a company formed under the laws of Antigua and Barbuda with registration number 17532 as identified by the Antigua and Barbuda Financial Services Regulatory Commission. The Debtor's principal place of business is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

with funds that SBF and Wang had purportedly borrowed from Alameda Research Ltd. The Assets were held in the Debtor's name with a brokerage in New York until December 2022, when they were seized by the U.S. Department of Justice (the "DOJ"). The Assets are potentially subject to forfeiture to the DOJ if—and only if—SBF is convicted of specified crimes and the Assets are found to be the proceeds of those crimes. One of SBF's alleged crimes is causing Alameda to systematically misappropriate FTX customers' funds. Caroline Ellison, Alameda's co-CEO, has confessed to this crime.

Claims to the Assets have been made by (i) the DOJ, for the benefit of SBF's victims, (ii) Alameda, for the benefit of its creditors, (iii) BlockFi, for the benefit of its creditors, (iv) SBF himself, (v) FTX Digital Markets Ltd (in provisional liquidation), a chapter 15 debtor, and (vi) Yonatan Ben Shimon, an FTX customer who alleges that his deposits may have been misappropriated by Alameda and used to purchase the Assets. There may be many other FTX customers who could assert claims like those Mr. Shimon has asserted, based on a good-faith belief that their own deposits were misappropriated in the same way.

Some of the competing claims to the Assets may be subject to avoidance or subordination; some are contingent; all are disputed by the Debtor at this point and many are disputed by other interested parties. Among many bigger-picture issues, this Court might one day approve the substantive consolidation of the Debtor's estate with the FTX Debtors' estates, or a compromise involving the Debtor and the DOJ governing distributions to creditors and victims.

Given all of the foregoing circumstances, a chapter 11 case in this Court is entirely appropriate. The other FTX Debtors support the Debtor's filing. The DOJ has expressed no objection. Nor has the U.S. Trustee.

The only interested party trying to prevent this Court from overseeing the Debtor's marshalling of assets, resolution of claims, and reorganization is BlockFi. Its Motion rests on two false premises: first, the Debtor has no assets and never will; second, BlockFi is the Debtor's only legitimate creditor. Of course, if either premise were true, BlockFi would have no reason to attack this chapter 11 case: if the Debtor had no assets, BlockFi would have nothing to covet; if the Debtor has assets but only BlockFi for a creditor, BlockFi would stand to receive all the Debtor had to give. So, the very act of filing its Motion betrays BlockFi's true motive.

That motive is to regain an advantage vis-à-vis the Debtor's other creditors that BlockFi enjoyed before this case was filed, when the Debtor had difficulty obtaining effective relief in the U.S. If this case is dismissed, the Debtor's estate will have to be administered in the Antigua High Court, whose orders BlockFi has openly disregarded. More importantly, Bankruptcy Code sections 547 and 548 pose an existential threat to BlockFi's claims against the Debtor and the Assets.

On November 8, 2022, the day FTX froze its customers' accounts, the Debtor had no relationship with BlockFi whatsoever. The next day—two days before the first FTX petition was filed in this Court—Caroline Ellison purportedly signed a Pledge Agreement, whereby the Debtor guarantied Alameda's $700 million debt to BlockFi and pledged substantially all its assets to secure that guaranty. In exchange, BlockFi granted Alameda a loan forbearance of up to one week, which turned out to be one day, and gave the Debtor nothing. This is a cross-stream guaranty and pledge for no consideration that rendered the Debtor insolvent on the brink of the direct obligor's bankruptcy.

Even leaving aside that Ms. Ellison has confessed to misappropriation of funds and fraud, and that she signed the Pledge Agreement despite having no position with the Debtor, and that

3

SBF has asserted publicly that Ms. Ellison had no authority to sign at all—solely on the undisputed facts, BlockFi's claims are obvious candidates for avoidance as preferential and fraudulent transfers. BlockFi has made it clear that it will not honor any judgment entered by the Antigua court avoiding the Pledge Agreement under analogous Antiguan law. But BlockFi will not be able to ignore a Bankruptcy Court decision enforcing sections 547 and 548, which will inevitably arise when BlockFi asserts its purported claims against the Debtor's estate—through the claims resolution process, the plan process, or (if need be) in litigation.

The Motion is long on conclusory embellishments and unjustified attacks on the Debtor's fiduciaries, presumably because BlockFi knows the Motion is unsupported by the facts or the law. As the facts recited above plainly demonstrate, the Debtor owns property (and a claim to property) in the U.S., and this case was filed to maximize the value of the Debtor's assets for the benefit of its legitimate creditors, whoever they are, and even if they turn out to include BlockFi. To the extent the Debtor has obtained any litigation "advantages," they are incidental to a perfectly appropriate chapter 11 filing (and BlockFi has the same "advantages" arising from its own chapter 11 case).

A chapter 11 case in this Court, jointly administered with the other FTX Debtors' cases, is the best means imaginable for the Debtor to engage with its stakeholders from a position of authority, to maximize its assets, to solicit and resolve claims, and to make equitable distributions pursuant to a plan, all in coordination with the other FTX Debtors' and the DOJ's parallel efforts. The Motion should be denied.

**FACTS**

The Debtor respectfully refers the Court to the Barkhouse Declaration (ECF No. 3) filed concurrently with the petition for the background to this chapter 11 case. The facts most pertinent to the Motion are summarized below.

The Debtor is an Antigua company 90% owned by SBF and 10% owned by Zixiao "Gary" Wang.[2] The Debtor's only known purpose was to purchase approximately 56 million shares of Robinhood Markets, Inc., which it did in or about May 2022 using funds purportedly borrowed by the two owners from Alameda Research Ltd. (which is also majority-owned by SBF).[3] The Debtor sold a small fraction of these shares at some point, but otherwise held the shares and the proceeds of the sale in an account in the Debtor's name at ED&F Man Capital Markets Inc., now known as Marex Capital Markets Inc., in New York, until they were seized by the DOJ.[4]

On November 8, 2022, FTX Trading Ltd. froze its customers' accounts.[5] On November 9, 2022, BlockFi purported to enter into a one-week-maximum Forbearance Agreement with Alameda and a related Pledge Agreement with the Debtor.[6] On November 10, 2022, Alameda and the Debtor allegedly defaulted under those agreements.[7] On November 11 and 14, 2022, FTX Trading Ltd. and more than 100 affiliates (but not the Debtor) filed chapter 11 petitions in this

---

[2] Barkhouse Decl. ¶¶ 1, 9.

[3] SBF Affidavit ¶ 7, Ex. 5 to Ex. B of Joshua Dorchak Decl., *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF No. 19 (Bankr. D.N.J. Dec. 27, 2022).

[4] Barkhouse Decl. ¶ 6; United States' Notice of Asset Seizures, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD), ECF No. 477 (Bankr. D. Del. Jan. 11, 2023).

[5] Edgar W. Mosley II Decl. ¶ 29, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD), ECF No. 337 (Bankr. D. Del. Dec. 30, 2022).

[6] Renzi Decl. in support of the Motion ¶¶ 9-12, Ex. A (ECF No. 32-2); Barkhouse Decl. ¶ 25.

[7] Renzi Decl. in support of Motion ¶ 15, Ex. A (ECF No. 32-2).

Court (the "FTX Debtors").[8] On November 18, 2022, upon the petition of Yonatan Ben Shimon, the High Court of Antigua appointed Angela Barkhouse and Toni Shukla as Receivers over the Debtor.[9] On November 28, 2022, BlockFi filed its chapter 11 petition in New Jersey Bankruptcy Court (the "NJBC") and filed its complaint and turnover motion against the Debtor and Marex, seeking turnover of the Assets (the "BlockFi Action").[10] On December 5, 2022, upon the petition of the Receivers, the Antigua Court appointed the Receivers as Joint Provisional Liquidators of the Debtor (in such capacity, the "JPLs") by an order that, among other things, stayed any litigation against the Debtor.[11]

Despite this, BlockFi did not stay the BlockFi Action against the Debtor.[12] On December 27, 2022, the JPLs appeared in the BlockFi Action and requested an extension of time to respond to the turnover motion, so they could investigate BlockFi's claims.[13] BlockFi opposed that motion, and the NJBC denied it.[14] On December 9, 2022, the SDNY unsealed an indictment of SBF and in early January the DOJ seized the Assets.[15] On January 9, 2022, the NJBC denied BlockFi's

---

[8] Decl. of John J. Ray III ¶ 40, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD), ECF No. 24 (Bankr. D. Del. Nov. 17, 2022).

[9] Barkhouse Decl. ¶ 15.

[10] *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF Nos. 1, 2 (Bankr. D.N.J. Nov. 28, 2022).

[11] Barkhouse Decl. ¶ 16, Ex. B ¶ 8.

[12] Barkhouse Decl. ¶¶ 27-31.

[13] JPLs' Emergency Motion to Extend Time to Respond to Complaint, *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF No. 19, (Bankr. D.N.J. Dec. 27, 2022) ("[T]he JPLs have been appointed for less than six weeks, and this case merges both an extraordinary degree of complexity with a paucity of dependable information.").

[14] BlockFi's Opposition to JPLs' Emergency Motion, *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF No. 27, (Bankr. D.N.J. Dec. 28, 2022); *see also* Joint Scheduling Order, *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF No. 31, (Bankr. D.N.J. Dec. 30, 2022).

[15] United States' Notice of Assets Seizures, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD), ECF No. 477 (Bankr. D. Del. Jan. 11, 2023).

turnover motion as moot in light of the DOJ's seizure of the Assets.[16] BlockFi informed the NJBC that it would file an amended complaint, but never did so.[17]

The JPLs' appointments as provisional liquidators and as receivers have been challenged by SBF, in part with BlockFi's support, in the Antigua Court and the Eastern Caribbean Court of Appeal.[18] As of the Debtor's petition date (February 3, 2022), the JPLs defeated these challenges and have full authority to protect the Debtor's assets and manage the Debtor's affairs, including commencing this case.[19] Prior to filing this case, the Debtor arranged for a retainer to be held in a U.S. bank account by Morgan, Lewis & Bockius LLP to cover its work as proposed debtor's counsel, the amount of which was $320,477.60 as of the petition date.[20]

The purpose of the Debtor's case is to protect the Assets and resolve the numerous claims thereto in the form and forum most cost-efficient and conducive to (i) generally, comprehensive claims submission and resolution, and (ii) more specifically, negotiation and (if necessary) litigation among the Debtor and the FTX Debtors, BlockFi, SBF, the DOJ, and potentially other interested parties.[21] In particular, assuming BlockFi insists on claiming against the Debtor's estate, the Debtor intends to pursue the avoidance of BlockFi's interests arising from the guaranty and pledge that the Debtor purportedly granted in the short window between FTX freezing its

---

[16] Jan. 9, 2023 Minute Order, *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK) (Bankr. D.N.J.).

[17] Jan. 9, 2023 Hr'g Tr. 59:03-60:05, *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK) (Bankr. D.N.J.) ("THE COURT: [T]he United States is not a party. Would [BlockFi] contemplate or is [BlockFi] contemplating amending the complaint[?] . . . MR. ANIGIAN: "[C]omplaint needs to be amended at this point. If we need to modify our schedule because of the addition of new parties, we're more than happy to do that.").

[18] Barkhouse Decl. ¶¶ 19-21.

[19] Barkhouse Decl. ¶¶ 22-23; Goodchild Decl. ¶ 4.

[20] Goodchild Decl. ¶ 6.

[21] Barkhouse Decl. ¶ 11 (creditors), ¶ 12 (litigations); Goodchild Decl. ¶ 5.

customers' accounts and FTX filing its chapter 11 cases.[22] But BlockFi is not unique, in that the Debtor will test all purported claims and interests asserted against its estate, as the Debtor has a duty to do. Given the many parties claiming to be creditors or outright owners of the Debtor's Assets in proceedings in the U.S., chapter 11 protection is the only practical way to empower the Debtor to defend itself, the Assets, and its creditors' interests in the U.S.[23]

## ARGUMENT

### A.   The Debtor is eligible for bankruptcy protection under section 109 due to its ownership of the Assets, its in rem claim in the potential forfeiture action, and (in any event) its counsel's retainer.

BlockFi argues that the Debtor is ineligible to be a debtor under section 109 because neither its Assets nor its claim to the Assets constitute property in the U.S. These arguments are easily disproved. And in any event, the Debtor's counsel has been holding the Debtor's property in the U.S. since before the petition date.

The Assets. There is no dispute that the Assets are in the U.S. The Debtor has held since May 2022, and still holds, title to the Assets, notwithstanding that the Assets are currently controlled by the DOJ.[24] Section 109(a) requires only that the proposed debtor had "property in the United States at the time [it] actually file[d]." *In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000). Thus, the Debtor's ownership of the Assets on its petition date qualifies the Debtor for chapter 11. *See id.* It's that simple.

The two decisions that BlockFi dug up to support the principle that property seized by the government cannot qualify as "property of the estate" are fatally off point. Both address a debtor's

---

[22] *See* Barkhouse Decl. ¶¶ 28, 30.

[23] *See* Barkhouse Decl. ¶¶ 13, 23, 31.

[24] BlockFi diffidently asserts ownership of the Assets in two footnotes (n.9 and n.12), but the cited provisions of the Pledge Agreement do not purport to transfer ownership of the Assets to BlockFi automatically upon a breach. In any event, BlockFi does not assert that the Debtor has no property interest in the Assets at all.

8

turnover claim under section 542, which only relates to "property that the trustee may use, sell, or lease under section 363 of this title." *See Diversified Fiber Prods. v. United States (In re Thena, Inc.)*, 190 B.R. 407, 410-12 (D. Or. 1995) (explicitly finding that the property could not be so used, sold, or leased); *Sweet v. U.S. (In re VPH Pharmacy, Inc.)*, 2018 WL 3574721, at *2-3 (Bankr. E.D. Mich. July 25, 2018); 11 U.S.C. § 542(a).

These decisions have nothing to do with section 109(a), which cannot be interpreted as importing sub silentio restrictions from other sections of the Bankruptcy Code. *In re Insys Therapeutics, Inc.*, 2021 WL 3508612, at *2 (Bankr. D. Del. June 17, 2021) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citing *Russello v. U.S.*, 464 U.S. 16, 23 (1983)). In fact, courts interpret section 109(a) broadly, including for foreign debtors seeking chapter 11 protection. *See, e.g.*, *Aerovias Nacionales de Colombia S.A. Avianca*, 303 B.R. 1, 8-9 (Bankr. S.D.N.Y. 2003) ("Cases that have construed the 'property' requirement with respect to foreign corporations and individuals have found the eligibility requirement satisfied by even a minimal amount of property located in the United States.") (collecting cases).

<u>The in rem claim to the Assets.</u>  BlockFi does not dispute that the Debtor has a claim to the Assets in the DOJ's prospective in rem forfeiture action, or that such a claim is the Debtor's property; BlockFi's own primary precedent confirms this. *See Thena*, 190 B.R. at 412. Rather, BlockFi argues that this claim is located in Antigua. In the only decision that BlockFi found to support this argument, the court equated the location of the debtors' property claim with the location of the debtors' headquarters simply "in this Court's view," without any supporting citation. *In re Head*, 223 B.R. 648, 652 (Bankr. W.D.N.Y. 1998). Moreover, the court in that case

9

plainly considered the debtors' claims to be "'too tenuous, too inchoate, and too contrived" to constitute property in the United States under section 109(a)," as was recognized by the Southern District of New York Bankruptcy Court in a decision discussing and distinguishing *Head*. *See In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 371 (Bankr. S.D.N.Y. 2014) (citing *Head*, 223 B.R. at 652).

The *Octaviar* court, correctly, saw the *Head* decision as an exception to the rule and itself held, as a rule, that: "Where a court has subject matter and personal jurisdiction, the claim is present in that court." *Octaviar*, 511 B.R. at 372 (citing *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 231-32 (Bankr. S.D. Fla. 2013); *In re Iglesias*, 226 B.R. 721, 723 (Bankr. S.D. Fla.1998)). In an in rem proceeding, simple logic also supports this rule. By definition, the Debtor cannot pursue in Antigua an in rem claim to property under the exclusive in rem jurisdiction of a court in New York.

BlockFi's backup argument (Mot. at 17) that the Debtor's claim to the Assets is not "real" but rather is "hypothetical" and thus "too inchoate" makes no sense. Unless the Debtor really owns the Assets, BlockFi cannot possibly have a particular claim to them, because BlockFi's purported rights in the Assets—as a secured creditor—depend on the Debtor having a property interest in the collateral to pledge to BlockFi in the first place.

In any event, the Debtor, today, holds title to the Assets: that is not hypothetical. By contrast, title to the Assets will not pass to the U.S. unless <u>both</u> (i) SBF is convicted of crimes <u>and</u> (ii) the Assets are found to be proceeds of those crimes. *See, e.g.*, *United States v. Zaccagnino*, No. 03-10095, 2006 WL 1005042, at *3-4 (C.D. Ill. April 18, 2006) (showing steps in forfeiture procedure). Likewise, title to the Assets will not pass to BlockFi unless <u>both</u> (i) BlockFi defeats all attempts to avoid or unwind the Pledge Agreement <u>and</u> (ii) BlockFi somehow converts its

security interest into an ownership interest. Thus, it is the United States' and BlockFi's interests in the Assets that are conditional and provisional, not the Debtor's.[25]

<u>Debtor's counsel's retainer.</u>  Before this case was commenced, a retainer to cover future work on behalf of the Debtor was paid on the Debtor's behalf to Morgan Lewis. *See* Goodchild Decl. ¶ 7. Since that time, Morgan Lewis has held the unused portion of the retainer in a bank account in the U.S. As of the commencement of this case, the unused amount of that retainer was $320,477.60. *See id*.

It is well settled that an unexpended retainer in the possession of a proposed debtor's counsel in the U.S. suffices to qualify the debtor under section 109(a). *See, e.g.*, *In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000) (undrawn legal counsel retainer is property of the estate for section 109(a) purposes) (cited by BlockFi, Mot. at 16); *In re Culligan Ltd.*, 2021 WL 2787926, at *9 (Bankr. S.D.N.Y. July 2, 2021) ("Undrawn attorney retainers satisfy the 'property in the United States' eligibility requirement of section 109(a) of the Bankruptcy Code."). This is true even where (as here) the retainer was paid on the Debtor's behalf, rather than by the Debtor. *See Glob. Ocean Carriers*, 251 B.R. at 39 ("It is not relevant who paid the retainer, so long as the retainer is meant to cover the fees of the attorneys for all the Debtors, as it clearly was in these cases."); Goodchild Decl. ¶ 6.

<u>Conclusion.</u>  The Debtor clears section 109(a)'s low bar three times over. The Assets, the Debtor's in rem claim to the Assets in the contemplated forfeiture proceeding, and the retainer held by Debtor's proposed counsel are all property that the Debtor had in the U.S. on the petition

---

[25] BlockFi also argues that "any claim [the Debtor] makes to the [Assets] will fail," because SBF allegedly began his fraud scheme before the Debtor acquired the Assets. This puts the cart before the horse, since there has been no forfeiture ruling as yet. Moreover, this is a conclusory statement about a complex evidentiary matter, which will likely be subject to extensive negotiation and may be settled rather than tried. And, if it were true, BlockFi would have no enforceable security interest in the Assets.

11

date.  *See*, *e.g.*, *Avianca*, 303 B.R. at 8-9 (Bankr. S.D.N.Y. 2003); *Octaviar*, 511 B.R. at 371; *Glob. Ocean Carriers*, 251 B.R. at 37, 39.

### B. This bankruptcy case was filed in good faith.

BlockFi contests the Debtor's good faith on three grounds.  Giving no credit (as appropriate) to BlockFi's conclusory assertions, speculation, and ad hominem attacks on the JPLs' character, each attempt fails.

#### 1. This Chapter 11 Case Has a Legitimate Bankruptcy Purpose: To Maximize the Property Available to Satisfy Creditors' Claims.

As set out in the Barkhouse Declaration, the primary purposes for filing this case were to (a) "empower the Debtor to defend itself, the Assets, and its creditors' interests in the U.S.," (b) to administer the claims of the "many parties claiming to be creditors or outright owners of the Debtor's Assets in proceedings in the U.S.," and (c) to avail the Debtor of Bankruptcy Code powers to avoid preferential or fraudulent transfers.  Barkhouse Decl. ¶¶ 13, 30.  In other words, this case was filed to "to maximize the property available to satisfy creditors' claims"—not to gain an improper advantage in a bilateral dispute with BlockFi.  BlockFi itself admits (Mot. at 19-20) that such a purpose satisfies the "ultimate touchstone" of good faith filing.  *See*, *e.g.*, *In re Team Sys. Int'l LLC*, 640 B.R. 296, 311 (Bankr. D. Del. 2022).

BlockFi's argument that the Debtor has "no property to maximize" (Mot. at 21) because the DOJ currently has control of the Assets ignores not only the Debtor's intentions but also the facts:  the Assets are still the Debtor's property today; the Assets might never become subject to forfeiture; if the Assets are preliminarily subject to forfeiture, the Debtor will have the opportunity to assert and prove up its interests; and even if the Assets are finally subject to forfeiture, the Debtor's creditors are potential victims entitled to a share in the Assets and all forfeited property.

*See, e.g.*, *Zaccagnino*, 2006 WL 1005042, at \*3-4 (conviction, preliminary order, claim resolution, final order, in that order).

BlockFi also attempts (Mot. at 21) to undercut the Debtor's "purported goal of preserving the value of the [Assets]" by insisting that the DOJ forfeiture case and even its own adversary proceeding seeking turnover of the Assets are "already serving this function." This is a truly ridiculous proposal, that the DOJ and BlockFi will be better fiduciaries for the Debtor's creditors than the Debtor and the JPLs—as if the DOJ could assert avoidance claims against BlockFi, or BlockFi would assert avoidance claims against itself.

### 2. This Chapter 11 Case Was Not Filed for Any Improper Litigation Purpose.

Because the Debtor's case has been filed to accomplish one of the basic goals of chapter 11—namely, to maximize the property available to satisfy creditors' claims—the Motion should be denied, and this Court need not reach BlockFi's argument that the case was filed improperly to obtain a "tactical litigation advantage." *See Team Sys.*, 640 B.R. at 311. In any event, the supposed litigation advantages that BlockFi purports to detect underlying this case have no substance.

First, BlockFi argues (Mot. at 22) that the Debtor "seeks to decrease the JPLs' costs" and "put a ceiling on their fees and expenses." Of course the Debtor wants to limit its costs; there's nothing wrong with that. The Debtor is seeking joint administration with the other FTX Debtors in part because of the anticipated dramatic savings in administrative costs, which benefits the Debtor's creditors. *See* Debtor's Joint Administration Motion (ECF No. 38).[26] BlockFi also argues that the Debtor is attempting to increase the likelihood of its fiduciaries being paid. Paying its fiduciaries is something that virtually every debtor attempts to do, including, presumably,

---

[26] The Court doubtless will notice the irony that BlockFi's relentless litigation against the JPLs and the Debtor—including this meritless Motion—is a substantial contributor to the costs BlockFi is protesting.

13

BlockFi. In any event, BlockFi cites no support for the theory that such speculative and insulting allegations can constitute improper "litigation advantages" for purposes of section 1112(b), and they plainly are not, as they would not change the outcome of any legal dispute. *Cf. In re JER/Jameson Mezz Borrower II*, 461 B.R. 293, 300-03 (Bankr. D. Del. 2011) (BlockFi's quoted language on "eroding value" appears in the "Valid organizational purpose" discussion, not in the "Litigation tactic" discussion).[27]

Second, BlockFi argues (Mot. at 22) that the Debtor is "forum shopping" in order to avoid BlockFi's home court. It is absurd to argue that the Debtor had no legitimate reason to file its case in the same district as Alameda and its hundred-plus other affiliates: the venue statute expressly contemplates this. *See* 28 U.S.C. § 1408(2).

In short, BlockFi's attempt to reinforce its bad faith argument with the supposed litigation advantages of the Debtor's case is wrong on both fees and forum shopping.

### 3.     The Debtor Easily Passes the *Primestone* Test.

BlockFi's final attempt to establish the Debtor's bad faith (Mot. at 23-29) is to run through the *Primestone* factors. *See Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 555 (D. Del. 2002) (citing *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 159, 162 n.10, 165 (3d Cir. 1999)). This assessment of good faith should be based on the "totality of facts and circumstances" surrounding the filing and "is committed to the sound discretion of the bankruptcy or district court." *Primestone*, 272 B.R. at 555. As the Third Circuit has held, cases that are shown to be

---

[27] The quintessential improper litigation tactic in this context, which is at issue in *JER/Jameson* and in *Primestone* (discussed in next section), is filing a single asset realty case on the eve of a foreclosure. BlockFi's other cited cases deal with imminent or recent judgments. These scenarios are not remotely comparable to this case.

14

"patently abusive" by an accumulation of factors should be dismissed. *SGL Carbon*, 200 F.3d at 162.  This case does not come anywhere near the threshold for dismissal.

In the interest of efficiency, the factors are surveyed in summary format below.

| *Primestone* factor | As applied in this case |
|---|---|
| a. Single asset case | <u>Not quite</u>.  BlockFi incorrectly exaggerates that this is "a zero-asset case," citing the same section 542 turnover decision rebutted above.  In fact, the Debtor owns the Assets (and in the alternative, an in rem claim to the Assets).  And the Debtor has avoidance claims against BlockFi, which will benefit the Debtor's creditors as a whole. |
| b. Few unsecured creditors | <u>No</u>.  BlockFi incorrectly posits that the Debtor has "no creditors" other than itself.  But Alameda has asserted claims and other FTX Debtors may also do so; one FTX customer has asserted a claim based on misappropriation, and a similar claim (for damages or constructive trust or otherwise) could be asserted by thousands of FTX customers.  BlockFi does not have the privilege of nullifying all those claims in its brief.  In any event, this factor does not consider allowed claims, it considers creditors. |
| c. No ongoing business or employees | <u>Yes</u> (BlockFi and the Debtor agree). |
| d. Petition filed on eve of foreclosure; | <u>No</u> (BlockFi and the Debtor agree). |
| e. Two party dispute which can be resolved in pending state court action; | <u>No</u>.  BlockFi <u>admits</u> that if the Pledge Agreement is avoided, "claims by others … may come into play," and yet insists that those other claims are irrelevant.  BlockFi also suddenly ignores the DOJ, and Alameda, and Mr. Shimon.  Plainly, this is not a two-party dispute. |
| f. No cash or income; | <u>No</u>.  BlockFi <u>admits</u> that the Debtor "has cash," and yet illogically insists that because the Debtor is a special purpose vehicle, this factor is met.  The Debtor undisputedly holds title to the $20.7 million in cash seized by the DOJ.  This factor does not consider corporate mission, it considers cash. |

| | |
|---|---|
| g. No pressure from non-moving creditors; | No (BlockFi and the Debtor agree). |
| h. Previous bankruptcy petition; | No.  BlockFi disingenuously cites the other FTX Debtors' November 2022 petitions as "prior affiliated bankruptcies," but this factor considers serial filings over time, not affiliated filings at the same general time.  *See, e.g., Dye v. Joseph (In re Dye)*, 346 B.R. 669, 670 (Bankr. D. Del. 2006).  In other words, those other FTX bankruptcies are not prior bankruptcies, they are pending bankruptcies. |
| i. Prepetition conduct was improper; | No.  BlockFi's dishonest description of the JPLs' misconduct equates to the JPLs doing their fiduciary duty, which includes refusing to waive textbook avoidance claims or simply accept BlockFi's incessant proclamation that it is the Debtor's "sole creditor." |
| j. No possibility of reorganization; | No.  BlockFi exaggerates when it argues that the Debtor "has nothing to reorganize."  Again, the Debtor owns assets and will fight to have those assets distributed to its legitimate creditors, most likely in coordination with the other FTX Debtors' estates.  Even if this case takes the form of a liquidation pursuant to a chapter 11 plan, that is a recognized form of "reorganization" and certainly (to quote BlockFi's terms) constitutes a "benefit to be gained by having [the debtor] remain in bankruptcy." |
| k. Debtor formed immediately prepetition; | No (BlockFi and the Debtor agree). |
| l. Debtor filed solely to create automatic stay; and | No.  BlockFi admits that the automatic stay was likely not the sole purpose of filing this case, asserting "litigation advantage" as a proxy.  As shown above, however, there is no such litigation advantage here either. |
| m. Subjective intent of the debtor. | No.  BlockFi's admitted guess that access to "money" based on certain potential outcomes in the jointly administered cases was the JPLs' intent is overwhelmingly disproved by the motives explained in the Barkhouse Declaration and in the discussion above. |

Based on the actual circumstances, only one (or at most, one and a half) of the twelve *Primestone* factors applies to this case.  BlockFi imagines a world in which BlockFi received the

16

<u>only</u> transfer that Caroline Ellison made that was neither fraudulent nor made with misappropriated FTX customer funds; and in which Debtor's ownership of over half a billion dollars of assets means nothing; and in which BlockFi is the Debtor's only creditor; and in which BlockFi can predict the future and read the JPLs' minds; and in which any opposition to BlockFi's claims is by definition an abuse or misconduct.  Even so, BlockFi admits, or virtually admits, that only <u>five</u> of the twelve factors apply to this case.

In light of the *Primestone* factors, the Barkhouse Declaration, and other facts set forth above, this Court should find that the Debtor's chapter 11 filing was not patently abusive and should exercise its sound discretion to deny the Motion, so that the Debtor and its professionals may proceed to maximize the Debtor's assets and otherwise protect the interests of the Debtor's creditors.  *See SGL Carbon*, 200 F.3d at 162; *Primestone*, 272 B.R. at 555-58.

**CONCLUSION**

For the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion.

Dated:   March 2, 2023
         Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**

/s/  *Jody C. Barillare*
Jody C. Barillare (Bar No. 5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
Email: jody.barillare@morganlewis.com

- and -

John C. Goodchild, III (admitted *pro hac vice*)
Matthew C. Ziegler (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Email: john.goodchild@morganlewis.com
       matthew.ziegler@morganlewis.com

- and -

Craig A. Wolfe (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
David K. Shim (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Email: craig.wolfe@morganlewis.com
       joshua.dorchak@morganlewis.com
       david.shim@morganlewis.com

*Proposed Counsel for Emergent Fidelity Technologies Ltd as Debtor and Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

I certify that on this 2nd day of March 2023, a true and correct copy of the foregoing *Debtor's Opposition to BlockFi's Motion to Dismiss* was sent via ECF Noticing to all parties receiving ECF Notices in this Chapter 11 Case.

*/s/ Jody C. Barillare*
Jody C. Barillare, Esq.