## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Emergent Fidelity Technologies Ltd.,[1] | Case No. 23-10149 (JTD) |
| Debtor. | (Joint Administration Requested) |
| | **Hearing Date: March 14, 2023, at 10:00 a.m. (ET)** |

### FTX DEBTORS' OPPOSITION TO BLOCKFI'S MOTION TO DISMISS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors")[2] hereby submit this Opposition (the "Opposition") to *BlockFi's Motion For Entry of an Order Dismissing the Debtor's Chapter 11 Case* [D.I. 32] (the "Motion to Dismiss" or "Mot.") filed by BlockFi Inc. ("BlockFi Inc."), BlockFi Lending LLC ("BlockFi Lending"), and BlockFi International Ltd. ("BlockFi International," together with BlockFi Inc. and BlockFi Lending, "BlockFi"). In support of the Opposition, the FTX Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1. The FTX Debtors and their stakeholders have a significant interest in safeguarding the Robinhood Shares (the "Shares") and efficiently resolving the morass of litigation

---

[1] The Debtor in this chapter 11 case is Emergent Fidelity Technologies Ltd. ("Emergent" or the "Emergent Debtor"), a company formed under the laws of Antigua and Barbuda with registration number 17532 as identified by the Antigua and Barbuda Financial Services Regulatory Commission. The Debtor's principal place of business is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in the FTX Debtors' chapter 11 cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

claims at the heart of this case.  As detailed in the FTX Debtors' Stay Enforcement Motion,[3] Alameda Research, Ltd. ("Alameda") claims ownership of the Shares.  Moreover, Alameda asserts that it holds significant claims to avoid the pledges purportedly obtained by BlockFi on the eve of the FTX Bankruptcy Proceedings.  As a result, Alameda either owns Emergent's primary asset— the Shares—or is the Emergent Debtor's largest creditor.

2.      In addition to Alameda, no less than *five* other parties already have asserted claims to the Shares in various forums around the world.  There could be many more to come.  As a result, Emergent's chapter 11 case filed before this Court (the "Emergent Bankruptcy Proceedings") is a proper proceeding to ensure that the value of the Emergent Debtor's assets is maximized for the benefit of all stakeholders, and there is a single forum and process for resolution of the competing claims.

3.      Contrary to BlockFi's representations, questions about who owns the Shares are inextricably tied up in the FTX Debtors' chapter 11 cases, and require a fair and efficient resolution process before this Court.  As the FTX Debtors have argued in their Stay Enforcement Motion, BlockFi's litigation maneuvers not only have violated the automatic stay in the FTX Bankruptcy Proceedings, but also have resulted in inefficient and duplicative litigation across multiple jurisdictions.

4.      The claims asserted by BlockFi relate solely to satisfaction of loan claims against Alameda which plainly need to be brought before this Court in the FTX Bankruptcy Proceedings alongside the millions of other claims.  The Shares are potentially subject to forfeiture by the U.S. Department of Justice ("DOJ") upon the conviction of Samuel Bankman-Fried of

---

[3]    *Debtors' Motion to Enforce the Automatic Stay or, in the Alternative, Extend the Automatic Stay* [D.I. 291] (the "Stay Enforcement Motion"), filed in *In re FTX Trading Inc.*, No. 22-11068 (Bankr. D. Del.) (JTD) (the "FTX Bankruptcy Proceedings"), which has been adjourned without date.

certain crimes for which he is charged.  Caroline Ellison, Alameda's former Chief Executive Officer and the signatory to the disputed collateral pledges in favor of BlockFi on the eve of the FTX Bankruptcy Proceedings, has pled guilty to such crimes.  The Emergent Debtor filing for chapter 11 protection to permit this Court to oversee its assets and affairs is entirely appropriate. In fact, it is the best way to ensure the fair resolution of all interested parties' claims against the Emergent Debtor.

5.    The Emergent Debtor also is seeking to have this Court jointly administer its case with the FTX Debtors' cases.  The FTX Debtors support joint administration because it will further ensure that matters relating to the Emergent Debtor, all of which are closely related to the FTX Bankruptcy Proceedings, are addressed efficiently and comprehensively as to all stakeholders, and done so before this Court in a coordinated manner.

6.    BlockFi is the only interested party attempting to prevent this Court from overseeing the Emergent Debtor's marshalling of assets, resolution of claims, and reorganization. The question is why?  If BlockFi has the interests it asserts in the Shares, it should welcome the administration of the Emergent estate before this Court and resolution of its claims.  In reality, the Motion to Dismiss is a litigation tactic, constituting BlockFi's latest attempt to front-run resolution of its loan claims against Alameda by reviving the adversary proceeding that it improperly commenced in its own bankruptcy proceedings after the stay imposed by section 362(a) of the Bankruptcy Code was in place with respect to assets of the FTX Debtors.

7.    Despite containing pages of disputed "relevant background," the Motion to Dismiss does not explain why the joint provisional liquidators of Emergent (the "JPLs") should decline to carry out their fiduciary duties under Antiguan law to execute a structured reorganization of Emergent.  Nor does the Motion to Dismiss explain why dismissal of the Emergent Bankruptcy

Proceedings would benefit any creditors of BlockFi, the FTX Debtors, or Emergent.  Furthermore, in arguing for dismissal, BlockFi ignores the many efficiencies that will result from this Court's supervision of the Emergent Bankruptcy Proceedings.

8.    Indeed, this Court's supervision of the Emergent Bankruptcy Proceedings will have numerous benefits.  *First*, because the potentially millions of claims against the FTX Debtors will be adjudicated in this Court—including BlockFi's claims—it is more efficient for claims to Emergent's assets, and avoidance actions related to the Shares, to be litigated in the same court.  *Second*, if Emergent's request for joint administration with the FTX Debtors pursuant to Bankruptcy Rule 1015 is granted, this Court will be able to efficiently administer these related chapter 11 cases and thus conserve resources of the Court, the FTX Debtors, the Emergent Debtor and all of their stakeholders—including BlockFi.  *Third*, because the Shares have been seized by the DOJ and will be frozen while criminal proceedings relating to them progress, there is an opportunity to centralize all claims against Emergent's assets so they may be promptly resolved at the appropriate time.

9.    When BlockFi's posturing is stripped away, the Motion to Dismiss presents no legitimate basis for dismissal of the Emergent chapter 11 case, and it should be denied.

## **BACKGROUND**

### A.    **BlockFi's Relationship with Alameda**

10.    BlockFi and the FTX Debtors hold claims against each other.  BlockFi lent digital assets to Alameda pursuant to master loan agreements entered into in 2019, 2020 and 2022 (the "Loan Agreements").  As described in BlockFi's First Day Declaration, "[t]he amounts of BlockFi's loans to Alameda have varied over time and typically consisted of digital assets (primarily BTC and ETH) and USD-denominated stablecoins."  *In re BlockFi Inc.*, No. 22-19361

(Bankr. D.N.J.) (MBK) (the "BlockFi Bankruptcy Proceedings") D.I. 17 ("BlockFi First-Day Decl.") ¶ 92.

11.    Separately, on June 30, 2022, FTX Debtor West Realm Shires Inc. ("WRS"), as lender, entered into a loan agreement with BlockFi Inc., as borrower, and other BlockFi entities, as guarantors, to provide senior unsecured financing to BlockFi. (BlockFi First Day Decl. ¶ 67.)  As of the date BlockFi commenced its bankruptcy proceedings, there were approximately $275 million of USD stablecoins loans outstanding, making FTX Debtor WRS a significant creditor of the BlockFi Debtors.  (*Id*. ¶ 72.)

12.    By November 2, 2022, "public reports began to circulate citing leaked, internal financial statements and questioning the health and liquidity of both FTX and Alameda." (*Id.* ¶ 93.)  In response to this, BlockFi engaged in self-help and "took several proactive measures to attempt to limit its exposure to FTX and Alameda through a combination of margin calls and recalls of open-term loans."  (*Id*. ¶ 96.)

13.    Following alleged defaults by Alameda, BlockFi sought preferential treatment through the grant of additional security from Alameda.  As part of the discussions between Alameda and BlockFi—which took place against the backdrop of FTX's well-publicized financial distress—Ms. Ellison, then the CEO of Alameda, offered the Shares as collateral for Alameda's debts.

14.    BlockFi accepted the Shares as collateral for its loan to Alameda only after Alameda's then-CEO:

- included the Shares on a spreadsheet listing Alameda's liquid assets, without any indication that the Shares were owned differently than assets for which Alameda held title;

- represented to BlockFi at its request that she had authority to pledge the Shares on *Alameda's* behalf; and

- pledged the Shares as collateral to secure a loan that BlockFi made to Alameda.

15. Zachary Prince, the CEO of BlockFi, agreed to Ms. Ellison's offer to pledge the Shares and other assets as security for Alameda's debts. Shortly afterward, on November 9, 2022, Ms. Ellison and Mr. Prince signed three agreements.

16. *First*, Alameda and BlockFi purported to enter into the Forbearance Agreement. Under the Forbearance Agreement, BlockFi agreed to forbear from exercising its rights and remedies under the Loan Agreements for a mere one week, until November 16, 2022, or until a specified event of default or termination event occurred. In exchange, Alameda agreed to make payments according to a specified schedule and, "as a condition to the effectiveness of the Forbearance Agreement," to enter into two agreements pledging additional collateral.

17. *Second*, BlockFi and Emergent purportedly entered into a Pledge Agreement (the "Robinhood Pledge"), which was signed for Emergent by Ms. Ellison as "Co-CEO." To date, the FTX Debtors have not identified any information that suggests Ms. Ellison held any position at Emergent or had any authority to execute the Robinhood Pledge. The Robinhood Pledge purported to grant BlockFi a security interest over the Shares in order to further secure Alameda's obligations under the Loan Agreements.

18. *Third*, BlockFi and Alameda purportedly entered into a separate Pledge Agreement (the "Additional Pledge," and together with the Robinhood Pledge, the "Pledge Agreements"), which Alameda maintains is unenforceable on multiple grounds.

19. The two Pledge Agreements are identical in nearly all respects: both refer to the Loan Agreements and Forbearance Agreements and purport to grant BlockFi a security interest over additional collateral as security for Alameda's obligations under the Loan

Agreements.  The only distinctions between the Pledge Agreements are the respective identities of the entity for which Ms. Ellison purported to sign and the assets being pledged.

**B.      The FTX Debtors File for Bankruptcy Protection**

20.      On November 11 and November 14, 2022 (as applicable, the "<u>FTX Petition Date</u>"), the FTX Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The FTX Debtors continue to operate their businesses and manage their assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

21.      On December 22, 2022, the FTX Debtors filed their Stay Enforcement Motion.  The Stay Enforcement Motion details that, at the time they filed their chapter 11 petitions (and at all times thereafter), the FTX Debtors had a property interest in the Shares, and thus the automatic stay in the FTX Bankruptcy Proceedings has been applicable to the Shares since the FTX Petition Date.

22.      Following the seizure of the Shares by the DOJ, the FTX Debtors adjourned the Stay Enforcement Motion pending further discussions with the DOJ and other parties, without prejudice to resetting that motion for hearing at a later date if developments necessitate it.

**C.      The Joint Provisional Liquidators of Emergent Are Appointed**

23.      On November 17, 2022, Mr. Yonatan Ben Shimon, a customer of FTX Trading who allegedly deposited roughly $11 million worth of cryptocurrency in the FTX.com exchange, filed a claim against Emergent and Mr. Bankman-Fried in a court in Antigua and Barbuda, where Emergent is incorporated.   (Emergent Bankruptcy Proceedings, D.I. 3 ("<u>Barkhouse Declaration</u>") ¶ 15.)

24.      Mr. Ben Shimon argued to the Antiguan court that he is entitled to recover the amount of his deposit in FTX.com, which he alleges FTX Trading has not permitted him to withdraw, against the Shares held by Emergent.  (Barkhouse Declaration ¶ 15.)  On November 18,

2022, the Antiguan court granted Mr. Ben Shimon's application, entering a freezing injunction and appointing Angela Barkhouse and Toni Shukla from Quantuma (Cayman) Limited as receivers for Emergent.  (Barkhouse Declaration ¶ 1.)  On December 5, 2022, the Antiguan Court entered an order that Ms. Barkhouse and Ms. Shukla wind up Emergent as JPLs and "investigate [Emergent's] affairs and to preserve the value of [Emergent's] assets for the benefit of those entitled to them."  (Barkhouse Declaration ¶ 16–17.)

> **D.    The Turnover Motion and DOJ Seizure**

25.     On November 28, 2022, BlockFi filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Later that same day, BlockFi filed an adversary proceeding and accompanying turnover motion (the "Turnover Motion") against Emergent and Marex Capital Markets Inc., formerly known as ED&F Man Capital Markets Inc.

26.     In the Turnover Motion, BlockFi omitted many facts of record and alleged that the Robinhood Pledge and Forbearance Agreement establish that the Shares are property of BlockFi's bankruptcy estates, and thus sought turnover relief pursuant to Section 542 and Section 543 of the Bankruptcy Code.  In his response to the Turnover Motion, Mr. Bankman-Fried, the nominal 90% owner and sole director of Emergent prior to the appointment of the JPLs, confirmed that Ms. Ellison, the only purported signatory to the Robinhood Pledge, "lacked any authority to bind the company."[4]

27.     On January 4, 2023, the DOJ publicly announced at a hearing in the FTX Bankruptcy Proceedings that it had seized the Shares, which was confirmed by notices filed in

---

[4]    *Opposition to Debtors' Motion for Entry of an Order Pursuant to Sections 105(a), 542, and 543 of the Bankruptcy Code (I) Directing the Collateral to be Transferred to a Neutral Broker or Escrow Under the Court's Supervision or (II) Enjoining the Defendants From Transferring or Using the Collateral Pending Final Resolution of the Turnover Claims*, BlockFi. Adv. Pro. D.I. 38 at ¶ 3.

both the FTX Bankruptcy Proceedings [D.I. 477] on January 11, 2023, and the BlockFi Bankruptcy

Proceedings [D.I. 203] on January 6, 2023.

28.     On January 9, 2023, despite that the DOJ's seizure of the Shares mooted its

request for relief, BlockFi pushed forward with its scheduled hearing on its Turnover Motion.

Judge Kaplan declined to grant the relief requested, and directed that BlockFi file an amended

complaint in its adversary proceeding.  To date, BlockFi has not filed an amended complaint

against Emergent, which is now prohibited by the automatic stay, or challenged the DOJ's seizure

of the Shares.

**E.     Emergent Files for Bankruptcy Protection**

29.     Since their appointment on behalf of the creditors of Emergent, the JPLs

have successfully fought multiple actions by Mr. Bankman-Fried to reassert control over Emergent

and the Shares.  However, certain of Mr. Bankman-Fried's actions remain pending in Antigua,

threatening the interests of Emergent's creditors.  (Barkhouse Declaration ¶ 20.)

30.     On February 3, 2023, Emergent filed a petition for chapter 11 bankruptcy

protection in this Court.  In filing its petition, Emergent identified the FTX Debtors as affiliates of

Emergent.  (Emergent Bankruptcy Proceedings, D.I. 1 at 6.)

## ARGUMENT

## I.     THE EMERGENT BANKRUPTCY WAS APPROPRIATELY FILED AND SHOULD PROCEED

31.     Judicial and debtor efficiencies weigh strongly in favor of the Emergent

Bankruptcy Proceedings continuing in this District.  As demonstrated by the BlockFi adversary

proceeding and Antigua proceedings, absent the Emergent Bankruptcy Proceedings, claimants to

the Emergent Debtor's assets will assert claims against Emergent to collect debts owed by the FTX

Debtors in disparate jurisdictions.  As BlockFi has acknowledged, its claim to the Shares arises from the Robinhood Pledge obtained in connection with a loan owed by Alameda.  (Mot. ¶ 19.)

32.    Furthermore, while BlockFi wishes otherwise, this does not "boil down to a [two-party] dispute between Emergent and BlockFi." (Mot. ¶ 77.)  For the reasons explained in the Stay Enforcement Motion, the FTX Debtors have a bona fide ownership interest in the Shares. And various other claimants have already sought, and likely will continue to seek, recoveries from the Shares based on debts owed to them by the FTX Debtors.  With respect to BlockFi, both the FTX Debtors and the Emergent Debtor have avoidance claims based on the factual issues surrounding the validity of the Pledge Agreements that will need to be resolved at the appropriate time.

33.    BlockFi pretends that its "harm does not derive from the FTX Debtors" in order to avoid the reality that this Court is well-positioned to determine all claims related to the Shares. (Mot. ¶ 75.)  BlockFi's representation in this regard is belied by its separate assertion that "the Shares or the value thereof will eventually go to BlockFi and its clients, in whole or in part" as "victims" of the alleged fraud by the FTX Debtors and Mr. Bankman-Fried.  (Mot. ¶ 1.)  The bottom line is this Court will need to determine in the FTX Bankruptcy Proceedings the validity and priority of BlockFi's claims, and similar issues are raised with respect to its claims against Emergent.

34.    Because the FTX Bankruptcy Proceedings and the Emergent Bankruptcy Proceedings share a nucleus of common facts, Emergent's chapter 11 case should be adjudicated before this Court and administered in connection with the FTX Bankruptcy Proceedings. *See In re H.H. Distributions, L.P.*, 400 B.R. 44, 54 n.15 (Bankr. E.D. Pa. 2009) (describing joint administration as "a tool of administrative convenience and cost efficiency").

35.     The DOJ's seizure of the Shares on January 4, 2023 initiated yet another proceeding related to the Shares.  While final resolution of any future forfeiture proceedings might impact how the Shares ultimately are distributed, that possibility does not in and of itself moot claims to the Shares asserted by interested parties.  In the meantime, the Emergent Debtor should be permitted to proceed with its chapter 11 case for the benefit of all stakeholders.

## II.     PROPERTY OF THE ESTATE SURVIVES SEIZURE

36.     BlockFi's Motion to Dismiss is also legally unsupported for the reasons asserted in the Emergent Debtor's opposition.  But one of BlockFi's flawed arguments, that "[p]roperty seized under a criminal warrant before a debtor files bankruptcy" cannot constitute estate property (Mot. at ¶ 48)—merits additional discussion.  BlockFi's sole "support" for its specious position is language in two out-of-circuit lower court cases from which BlockFi selectively cites.  When read in context, neither supports BlockFi's argument.

37.     First, BlockFi cites *In re Thena, Inc.*, 190 B.R. 407 (D. Or. 1995), for the proposition that "[p]roperty seized under a criminal warrant before a debtor files bankruptcy 'is not includable as property of [its] estate.'"  (Mot. at ¶ 48.)  But that is not what the court held.  There, debtors in possession sought to compel the government to turn over seized property.  In denying that motion, the court found that, because "[t]he authority to 'use, sell, or lease' the seized property . . . is not includable as property of the estate," "plaintiffs' complaint for the turnover of the seized property is not supported by 11 U.S.C. § 542."  *Id.* at 412.  But that court did not address all of the rights that an estate can have in seized property.  Indeed, in cherry-picking language from the court's decision, BlockFi omits the *very next sentence*, which plainly states that "[o]ther rights existing at the time of the Chapter 11 filing *are* includable as property of the estate."  *Id.* (emphasis added). Those rights include:  (i) "the right to use judicial process to challenge the seizure warrant"; (ii) if forfeiture occurs, "the right to file petitions for mitigation or remission with the Attorney

General in order to secure the interests of creditors in the forfeited property"; and (iii) if forfeiture occurs, the right to receive the seized assets in a distribution from the Attorney General. *Id.* at 413. Thus, *Thena* stands merely for the proposition that, when the government seizes assets pre-petition, turnover is not the appropriate mechanism for the estate to retrieve those assets. That proposition is of no help to BlockFi, and says nothing about property rights requirements for purposes of section 109(a) of the Bankruptcy Code.

38.     BlockFi fares no better in relying on the second case it cites—*In re VPH Pharmacy, Inc.*, 2018 WL 3574721 (Bankr. E.D. Mich. July 25, 2018). That case also concerns an attempt by a bankruptcy trustee to compel turnover of seized property, which was denied. That limited ruling is both inapposite and uncontroversial.[5] Indeed, nothing about it supports BlockFi's argument that the DOJ's seizure of the Shares divested Emergent of sufficient interest in them to commence its chapter 11 proceedings.

39.     At the time of filing, Emergent possessed several types of interests in the Shares. These include, at minimum:

- A legal interest in the Shares (as BlockFi concedes);

- The right, following an order of forfeiture, to assert its ownership of the Shares in forfeiture proceedings under 21 U.S.C. § 853(n); and

- A contingent possessory interest based on the outcome of the ongoing criminal proceedings.

The Motion to Dismiss should be denied.

---

[5]    As the court explained, "if the Court were to hold otherwise, entities subject to forfeiture proceedings could undo any prepetition seizures by filing bankruptcy and seeking turnover." *Id.* at 2 (internal quotation marks and citation omitted).

## CONCLUSION

40.     For the reasons stated above, and for the reasons set forth in Emergent's

opposition, the Court should deny BlockFi's Motion to Dismiss.

Dated: March 2, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Matthew J. Porpora (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       porporam@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the FTX Debtors*