# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Emergent Fidelity Technologies, Ltd., | Case No. 23-10149 (JTD) |
| Debtor.¹ | Re: D.I. 32, 40, 41, 50 |

## BLOCKFI'S OMNIBUS REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

BlockFi Inc., BlockFi Lending LLC, and BlockFi International Ltd. (collectively, "BlockFi"), file this Reply in support of their motion to dismiss [D.I. 32] (the "Motion")² and in response to *Emergent's Opposition to BlockFi's Motion to Dismiss* [D.I. 40] ("Emergent Opp.") and the *FTX Debtors' Opposition to BlockFi's Motion to Dismiss*³ [D.I. 41] ("FTX Opp.," and with the Emergent Opp., the "Responses," and Emergent, the FTX Debtors, and the FTX Committee collectively, "Respondents"),⁴ and respectfully show as follows:

## I.    PRELIMINARY STATEMENT

1.      The Motion challenges whether Emergent (A) owned property in the United States when it filed its petition and (B) filed its petition in good faith. On both issues, Emergent bears the burden. And on both issues, Emergent fails. Respondents' primary argument in opposition to the

---

[1] The Debtor in this Chapter 11 case is Emergent Fidelity Technologies Ltd., a company formed under the laws of Antigua and Barbuda with registration number 17532 as identified by the Antigua and Barbuda Financial Services Regulatory Commission. The Debtor's principal place of business is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not defined herein are defined in the Motion.

[3] This Reply also responds to the *Joinder of the Official Committee of Unsecured Creditors of the FTX Debtors to the FTX Debtors' Opposition to BlockFi's Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case* [D.I. 50].

[4] BlockFi also objects to the Court's consideration of Angela Barkhouse's first-day declaration [D.I. 3] (the "Barkhouse Declaration") and the declaration of John C. Goodchild, III in support of Emergent's opposition [D.I. 40-1] (the "Goodchild Declaration") because both are hearsay. The Bankruptcy Rules require Emergent to meet its evidentiary burden through admissible evidence. FED. R. BANKR. P. 9017.

1

Motion is their rote assertion that Emergent filed "to maximize the value of [its] assets for the benefit of its legitimate creditors." Emergent Opp. at 4. But what "assets" has Emergent shown it can maximize? None. And what "legitimate creditors" does Emergent currently have? Only BlockFi. Because Emergent fails to prove it is entitled to this Court's protection, its petition should be dismissed.

2.  *First*, Emergent fails to prove that it owned any U.S. assets at the time of filing; thus, it has not satisfied its burden under section 109(a). *See* 11 U.S.C. § 109(a); *In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000). Emergent insists that three "assets" render it eligible to file for bankruptcy protection: (i) the Shares, which Emergent's counsel admits it "has no legal or practical ability to move [or] to do anything with"; (ii) its hypothetical, unfiled claim to such Shares in the Government's forfeiture action; and (iii) its attorneys' alleged retainer. None of these satisfy section 109(a)'s requirement on this record.

3.  *Second*, Emergent fails to show by a preponderance of the evidence that it filed for bankruptcy protection in good faith. *See In re EHT US1*, 630 B.R. 410, 423 (Bankr. D. Del. 2021) ("The burden of proof in establishing eligibility for bankruptcy relief lies with the party filing the petition," and once the debtor's good faith is put "at issue, the burden shifts once again to the debtor to establish that the petition was filed in good faith."). And it cannot—because the Responses confirm what the Motion alleges: Emergent filed its petition to secure a litigation advantage in its two-party dispute with BlockFi—the only direct creditor of Emergent to have asserted any claim.[5] And contrary to Emergent's position, the *Primestone* factors further favor dismissal.

---

[5] Though Respondents identify several alleged "creditors," none of those creditors (besides, *perhaps*, Alameda, whose claim is indirect) has standing to assert a claim against Emergent's estate. *See infra* Part II.B.i.

4. Indeed, the evidence suggests Emergent filed this case to obtain a litigation advantage. Merely filing its petition in this Court defies Chief Bankruptcy Judge Kaplan's preexisting jurisdiction over the Shares. It also seeks to avoid forfeiture proceedings in the Southern District of New York. For these reasons, the Court should dismiss Emergent's petition.

## II. ARGUMENT

**A. Emergent cannot prove it had property in the United States when it filed its petition.**

5. To avail itself of this Court's protection, Emergent must prove it has some U.S. property to maximize through the bankruptcy process. *In re Glob. Ocean Carriers*, 251 B.R. at 37. Emergent claims three forms of "property" support its petition: (i) the Shares, (ii) its unfiled claim to the Shares, and (iii) its law-firm retainer. On this record, none of them suffice.

### *i. The Shares do not constitute property of the estate.*

6. First, the Shares cannot be property of Emergent's estate, and Respondents failed to show otherwise. Indeed, the most noteworthy thing about the Responses on this issue is not what they said—but what they did not say. Respondents did not cite a single case supporting their request to this Court: rule that the assets the Government seized pursuant to criminal forfeiture statutes nonetheless qualify as property sufficient to support a later-filed bankruptcy petition.[6]

7. The reason no court has issued this ruling is simple—21 U.S.C. § 853 shuts the door on all proceedings asserting an interest in property that the Government alleges is subject to forfeiture. Section 853(k) bars any party from intervening in the underlying criminal proceedings in which forfeiture is sought, and no one can bring claims against the Government to assert "the

---

[6] None of the cases Emergent cited address the question of whether property subject to forfeiture at the time of a bankruptcy petition satisfies the requirements of 11 U.S.C. § 109. *See* Emergent Opp. at 8–11. In fact, the one case Emergent cited that deals with forfeiture arose in ancillary forfeiture proceedings in which the forfeiture court *denied* the Trustee's claim to assets subject to forfeiture. *United States v. Zaccagnino*, No. 03-10095, 2006 WL 1005042, at *2–4 (C.D. Ill. Apr. 18, 2006). The FTX Debtors did not cite any affirmative authority in support of their forfeiture argument. *See* FTX Opp. at 11–12.

3

validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section." 21 U.S.C. § 853(k)(1)–(2). Instead, all parties claiming an interest in property subject to forfeiture must assert their rights in ancillary proceedings before the forfeiture court. *Id.* § 853(k), (n). For that reason, numerous courts have ruled that parties claiming an interest in property subject to forfeiture cannot proceed in bankruptcy court. *See, e.g.*, *In re Thena, Inc.*, 190 B.R. 407, 412–13 (D. Or. 1995) (property seized two months before petition filing was "not includable as property of the estate"); *In re VPH Pharm., Inc.*, Case No. 18-11280, 2018 WL 3574721, at *2–3 (E.D. Mich. July 25, 2018) (property seized before bankruptcy was "not property of the bankruptcy estate").[7]

8.    Respondents' attempts to avoid this result are unavailing. Respondents cite no authority disagreeing with the unreserved holdings of both *Thena* and *VPH Pharmacy*, namely that property seized prepetition is "not includable in the bankruptcy estate." *In re VPH Pharm.*, 2018 WL 3574721, at *2; *Thena*, 190 B.R. at 412–13. The only basis Respondents raised for distinguishing these cases is that they arose in the context of section 542 turnover proceedings. Emergent Opp. at 8–9; FTX Opp. at 11–12. But Respondents do not explain why that matters. Nor can they. The *Thena* court's concluding sentences make clear that its holding was not limited to the turnover context: "Congress did not intend to allow debtors in possession to include in the estate property over which the debtor did not have equitable control at the time of filing the Chapter 11 petition . . . . Congress did not intend such property to be included in a Chapter 11 estate." 190

---

[7] *See also, e.g.*, *In re Am. Basketball League, Inc.*, 317 B.R. 121, 128–30 (Bankr. N.D. Cal. 2004) (avoidance claims barred by section 853(k); trustee should have asserted claims in ancillary forfeiture proceedings); *In re GuildMaster, Inc.*, 2013 WL 1331392, at *7–8 (Bankr. W.D. Mo. Mar. 29, 2013) (dismissing claims by parties asserting interest in seized property subject to forfeiture, which must proceed in forfeiture court); *In re Rothstein Rosenfeldt Adler, PA*, 2012 WL 4320479, at *5 (Bankr. S.D. Fla. Aug. 30, 2012) (trustee barred from recovering property by section 853(k); "the court for an ancillary proceeding is the exclusive means for a third party to claim an interest in forfeited property"); *In re Glob. Vending*, 2005 WL 2451763 at *2–4 (Bankr. S.D. Fla. June 1, 2005) (turnover action barred by section 853(k); the ancillary forfeiture proceedings are the "proper and exclusive forum" for claims to property subject to forfeiture).

4

B.R. at 413. *VPH Pharmacy* is equally clear, holding that assets "seized by the Government long before the bankruptcy action was filed" were "not property of the bankruptcy estate." 2018 WL 3574721, at *3.

9.  The court's analysis in *Thena* also explains why Respondents located no legal support for their apparent position that property not otherwise includable in the estate may nonetheless qualify as a basis for a bankruptcy petition under Section 109. As Respondents necessarily concede (Emergent Opp. at 8; FTX Opp. at 12), the Government's seizure divested Emergent of possession and control over the Shares. *See Thena*, 190 B.R. at 411. As a result, Emergent holds at most "legal title to the seized property in constructive trust." *Id.* at 412. This interest is "defeasible upon conviction" and bears no "equitable right to direct the seized property" for Emergent's benefit. *Id*. While Emergent may possess "bare legal title" as an academic matter, *see id*., as a practical matter, this Court has no basis to act over the property in question. The estate cannot seek turnover of the Shares from the Government or otherwise recoup their value for distribution to creditors. *See, e.g.*, 18 U.S.C. § 853(k); *Thena*, 190 B.R. at 413; *VPH Pharm.*, 2018 WL 3574721, at *2. Thus, the natural conclusion is that "property seized pre-indictment under a criminal forfeiture statute" should not "be included in a Chapter 11 estate." *Thena*, 190 B.R. at 413. Nothing in the language of section 109 of the Bankruptcy Code alters this essential fact.

10.  The three property interests cited by the FTX Debtors do not change the analysis. *See* FTX Opp. at 12. These are the same rights held by *any* party asserting an interest in seized property subject to potential forfeiture, and yet none of these rights were sufficient to maintain an action in bankruptcy court. *See supra* note 7. The Court should reject Respondents' invitation to

make new law that defies the carefully calibrated rights afforded to Respondents in forfeiture proceedings under 21 U.S.C. § 853.[8]

  *ii.*  **_Emergent's claim to the Shares does not qualify as section 109(a) property because its claim is located outside the United States and, regardless, cannot be adjudicated here._**

  11.  Emergent's attempt to rely on its claim to the Shares likewise fails on two independent bases. *First*, any claim Emergent may have to the Shares is not property located in the United States. Emergent's Response on this issue boils down to an assertion that because the Shares are physically located in the United States, its claim to the shares must also be located in the United States. *See* Emergent Opp. at 9–10. That is wrong. Emergent's "claim is *located* wherever [the debtor] reside[s], not where the [property] resides, even if the claims may only be *asserted* in the place where the [property] resides." *In re Head*, 223 B.R. 648, 652 (Bankr. W.D.N.Y. 1998) (emphasis in original); *see also* 2 COLLIER ON BANKRUPTCY ¶ 109.02 (16th ed. 2022) (citing *In re Head*, 223 B.R. at 652).

  12.  Emergent's reliance on *In re Octaviar Administration Party Ltd.*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014), is misplaced—primarily because Emergent rips *Octaviar*'s holding away from crucial context. *See* Emergent Opp. at 9–10. In *Octaviar*, the court did observe that a claim is "present" "where a court has both subject matter and personal jurisdiction." 511 B.R. at 372. But it did so in reference to claims *already pending* in a United States court. *Id.* at 370, 372. Thus,

---

[8]  Additionally, to the extent Respondents argue that the FTX Debtors claim a direct interest in the Shares, they are wrong. *See BlockFi's Objection to the Debtors' Motion to Enforce the Automatic Stay or, in the Alternative, Extend the Automatic Stay, In re FTX Trading Ltd., et al.*, Case No. 22-11068, [D.I. 378 at 13–17] (the "BlockFi FTX Objection"). Even if the FTX Debtors have a fraudulent-transfer claim against SBF for the funds used to capitalize Emergent, having such a claim *does not* give one an interest in the fraudulently transferred funds—or the property purchased with the allegedly fraudulently transferred funds. *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 865–66 (Bankr. D. Del. 2018) ("Property of the estate does not apply to property which has been fraudulently or preferentially transferred before the bankruptcy filing, because such property does not become 'property of the estate until it has been recovered by the estate.'"); *In re Allen*, 768 F.3d 274, 282 (3rd Cir. 2014) (citing cases); *see also* BlockFi FTX Objection at 16–17.

of course, the debtor's pending claims were "present" there—they were already *on the court's docket*. *Id.* By contrast, any hypothetical, unfiled claim Emergent may have against the seized Shares in New York is "present" where Emergent is—in Antigua. *See In re Head*, 223 B.R. at 652. Further, to the extent the proceedings in Antigua already concern the Shares, that claim is already pending in Antigua. Ex. B-16 ¶ 4(c).

13.    *Second*, Emergent's attempt to distinguish *Head* on the basis that the claims there were "too tenuous, too inchoate, and too contrived" to constitute property also fails—because that description applies equally to Emergent's own claims. Emergent Opp. at 10. Just like the debtors in *Head*—who claimed a contingent right to a potential surplus in a trust fund—Emergent's claims to the Shares are contingent on the failure of both the Government's criminal proceedings relating to SBF and BlockFi's claim. *See In re Head*, 223 B.R. at 652. Lacking any meaningful response to this point, Emergent throws stones at BlockFi and the Government, but all that matters are Emergent's claims to recover the Shares. And these claims cannot even be asserted until, at minimum, SBF is found not guilty, or a preliminary order of forfeiture is entered. And even if asserted, Emergent's claims to the Shares are sure to fail. Thus, such claims are too tenuous, inchoate, and contrived to constitute property of its estate.

14.    This Court's lack of jurisdiction over any alleged claim to the Shares lends further support to this point. As explained in the Motion, two independent courts are already exercising jurisdiction over the Shares: the Southern District of New York and the BlockFi Bankruptcy Court. The Southern District of New York has dominant jurisdiction over the Shares due to SBF's criminal proceedings, and any alleged claim to the Shares must be asserted there. *See In re WinPar Hosp. Chattanooga, LLC*, 404 B.R. 291, 302 (Bankr. E.D. Tenn. 2009) (holding that "it would be an abuse of [a bankruptcy court's] discretion to refuse to relinquish its jurisdiction over the [seized

property] to the" forfeiture court). But even if the forfeiture proceedings disappeared, exclusive jurisdiction over the Shares would fall to the BlockFi Bankruptcy Court, because the BlockFi Action is the first-filed action concerning claims to the Shares.[9] *See Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 465–66 (1939) (holding that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other" court). That court—through the Honorable Chief Bankruptcy Judge Michael B. Kaplan—has stated that it "intends to enforce" its stay orders concerning the Shares and that its "doors are open for parties seeking the appropriate relief from the automatic stay." Ex. B-21 at 89.[10] Emergent disregards the authority of these courts.

### iii. *Emergent failed to provide sufficient evidence that its law-firm retainer remains Emergent's property.*

15. Finally, Emergent cannot satisfy section 109(a)'s requirements with general allegations that Emergent paid its law firm a retainer. *See In re EHT US1*, 630 B.R. at 423 (holding it is the debtor's burden to establish "eligibility for bankruptcy relief"). *Cf. In re Stone Creek Mech., Inc.*, 2004 WL 5855600, at *8–9 (Bankr. E.D. Pa. Sept. 30, 2004) (describing different types of retainers). While a law-firm retainer may constitute property of the estate for purposes of section 109(a), it can only do so if the debtor and the law firm agree to a "security" retainer. *In re Indep. Eng. Co.*, 232 B.R. 529, 533 (B.A.P. 1st Cir. 1999). A security retainer "provides that the retainer will be held by the attorneys to secure payment of fees for future services," and "the retainer remains the property of the debtor until the attorney 'applies' it to charges for services actually rendered." *Stone Creek Mech.*, 2004 WL 585560, at *8. By contrast, an "advance payment" retainer is not estate property. *Id.*; *In re Indep. Eng. Co.*, 232 B.R. at 533. Rather, its

---

[9]   *See* BlockFi FTX Objection at 18–20.

[10]  Any citation herein to an "exhibit" refers to the exhibit appended to the Motion.

ownership "is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services." *Stone Creek Mech.*, 2004 WL 5855600, at *8.

16. Here, Emergent failed to show that the retainer is Emergent's property, and if anything, the evidence suggests that the retainer is an advance-payment retainer. The Goodchild Declaration contains no detail *at all* regarding the retainer at issue. *See* Goodchild Declaration. It also lacks support from documentary evidence like, perhaps, an engagement letter or written retainer agreement. *Id.* Conversely, Emergent's proposed order authorizing the retention of Morgan and Lewis suggests that the retainer already belongs to Morgan and Lewis, stating that "Morgan Lewis *shall* apply any remaining amounts of its prepetition retainer from the Debtor as a credit toward postpetition fees and expenses . . . ." D.I. 56-1 ¶ 8 (emphasis added). Further bolstering this conclusion is Emergent's decision not to list any retainer or interest therein on Schedule A/B of its initial schedules of assets and liabilities. *See* D.I. 34. On this evidentiary record, Emergent cannot meet its burden to show the retainer is the property of its bankruptcy estate. *See In re EHT US1*, 630 B.R. at 423.

**B.     Emergent failed to prove it filed in good faith.**

17. Emergent also failed to satisfy its burden to show by a preponderance of the evidence that its bankruptcy petition was filed in good faith. *See In re Integrated Telecom Express*, 348 F.3d 108, 118 (3d Cir. 2004); *In re Rent-A-Wreck Am., Inc.*, 596 B.R. 112, 117 (D. Del. 2019). "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). Specifically, Emergent must "establish that [it] filed [its] petition[] in good faith to preserve [Emergent's] going concern value or to maximize the value of [its] estate, rather than as a litigation tactic." *In re JER/Jameson*

*Mezz Borrower II, LLC*, 461 B.R. 293, 298 (Bankr. D. Del. 2011). Meeting this burden requires evidence admissible under the Federal Rules of Evidence. FED. R. BANKR. P. 9017.

18. Attempting to satisfy its burden, Emergent contends this case would provide an efficient vehicle through which it could repay creditors and maximize its estate. But this argument puts the cart before the horse because it rests on flawed assumptions: as explained above, Emergent has *no assets*, and its sole, direct creditor is BlockFi. These facts sap the strength of Emergent's good-faith arguments, making its appeal to "efficiency" ring hollow.

   *i.    **BlockFi is Emergent's only direct creditor, which shows this is a two-party dispute.***

19. Emergent's primary answer to BlockFi's good-faith challenge is its purported goal of maximizing value for Emergent's alleged creditors. Indeed, both Respondents assert—without any evidentiary support—that Emergent has many, even "thousands," of creditors. Emergent Opp. at 15. To date, however, the number of claims against Emergent is *two*: one by BlockFi, and one by alleged FTX customer Shimon. No one has moved for substantive consolidation to merge Emergent's estate (assuming it has an estate) with the FTX Debtors'. Nor has any fraud-based claim been asserted against the Emergent Pledge Agreement.[11] Further, though Emergent argues that the FTX Debtors are its creditors (and the FTX Debtors refer to themselves as such), no FTX Debtor has filed a claim against Emergent. Nor has the official committee of unsecured creditors appointed in the FTX cases styled as *In re FTX Trading, Ltd*, et al., Case No. 22-11068 (JTD). The

---

[11] Even if such a claim was asserted, it would be a long way from benefiting Emergent—or anyone else. Indeed, before a documented transaction like the Emergent Pledge Agreement can be ignored, the law requires that an avoidance claim first be asserted, supported with admissible evidence, and sustained. *See e.g.*, *In re DBSI, Inc.*, 2012 WL 3133480 (Bankr. D. Del. Aug. 1, 2012) (holding, in bankruptcy of a fraudulent debtor, that in fraudulent-conveyance action the trustee "must still show that the transfer at issue was made 'in furtherance of'" the fraudulent scheme).

same is true for the "thousands" of FTX customers Emergent claims are waiting in the wings. Emergent Opp. at 15. The existence of additional alleged claims and claimants is mere speculation.

20.   In any event, no claim of an FTX customer like Shimon or of an FTX Debtor makes this case anything but a two-party dispute. Shimon's claim is barred by lack of standing. That is because Shimon is *four levels* removed from Emergent. Ex. B-11. Shimon alleges he—like any FTX customer—deposited assets with FTX, which fraudulently transferred assets to Alameda, which lent the funds to SBF, who wrongfully used the assets to capitalize Emergent. Ex. B-11, B-12. Any claim like Shimon's is derivative of the FTX Debtors' claims and is "general" to the FTX Debtors' estate. *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 280, 282 (3d Cir. 2020) ("Claims alleging that third parties wrongfully depleted the debtor's assets are general or derivative because every creditor has a similar claim for the diversion of assets of the debtor's estate." (alterations adopted)). "General" claims are "based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors." *Id.* at 280, 283 (quotation omitted). This is precisely Shimon's claim. *E.g.,* Ex. B-12 ¶¶ 9, 27–28, 38, 45.[12] General claims must be asserted by the FTX Debtors' bankruptcy trustee because it has exclusive statutory standing to assert the claim. *In re Wilton Armetale, Inc.*, 968 F.3d at 282.

21.   Further, even if the FTX Debtors' trustee asserted claims against SBF, such claims are still a step removed from Emergent. To reach Emergent, they would have to pierce Emergent's corporate veil. *See In re LTL Mgmt., LLC*, 58 F.4th 738, 758–59 (3rd Cir. 2023) (stating that, as entity "separateness is foundational to corporate law, which in turn is a predicate to bankruptcy law, it is not easily ignored"). And even if they did that, the FTX Debtors' claim to the Shares

---

[12]   Candidly, Mr. Shimon also swore: "I know nothing regarding the source of funds used to acquire the 7.6% interest in Robinhood beyond that fact that is was allegedly 'working capital.'" Ex. B-12 ¶ 30(iii). Thus, Mr. Shimon's claim—just like those of all other alleged Emergent creditors other than BlockFi—is utterly unsubstantiated.

11

-
-

would be subject to BlockFi's rights through the Emergent Pledge Agreement, which BlockFi has and will continue to vigorously defend. To date, none of these steps have been taken.

22. In the end, this litigation comprises a two-party dispute: *BlockFi v. Emergent*. That case is already pending in the BlockFi Action.

### ii. The **Primestone** *factors favor dismissal.*

23. Finally, this Court's *Primestone* analysis conclusively favors dismissal. *See In re Primestone Inv. Partners, L.P.*, 272 B.R. 554, 557 (D. Del. 2002). Emergent's arguments to the contrary rest on the flawed propositions that it has both property to reorganize and creditors (other than BlockFi) to repay. Contrary to Emergent's calculation, 10 of the 13 factors favor dismissal. The *Primestone* analysis is as follows:

| *Primestone* factor | As applied in this case |
| --- | --- |
| a. Single asset case | <u>Yes</u>. *See* Part II.A.i, *supra*. Emergent has not shown it has even a single asset to reorganize. *First*, the Government's seizure of the Shares excludes them from the estate. *Second*, although Emergent may have a claim to the Shares, that claim resides outside the United States and cannot be brought in this Court. *Last*, the retainer provided to counsel may constitute an asset, but it depends on the retainer's terms—of which Emergent has offered no evidence. And Emergent did not identify any retainer as an asset on its initial schedules of assets and liabilities. |
| b. Few unsecured creditors | <u>Yes</u>. *See* Part II.B.i, *supra*. Emergent has no unsecured direct creditors. *First*, the only valid claim against Emergent that has actually been asserted is BlockFi's; no FTX Debtor has asserted a claim. *Second*, even if the FTX Debtors were to file a claim, they would have to sue SBF—not Emergent. |
| c. No ongoing business or employees | <u>Yes</u> (BlockFi and Emergent agree). |
| d. Petition filed on eve of foreclosure | <u>No</u> (BlockFi and Emergent agree). |
| e. Two party dispute which can be | <u>Yes</u>. Emergent's only legitimate dispute is with BlockFi. Every other purported creditor has derivative or indirect claims: any |

| *Primestone* factor | As applied in this case |
|---|---|
| resolved in pending state court action | claims the FTX customers, like Shimon, may have belong to the FTX Debtors, and the FTX Debtors' claims are against SBF. Even if the dispute reaches Emergent, the ultimate issue will be BlockFi's status as a bona fide purchaser for value through the Emergent Pledge Agreement. Thus, at bottom, any purported claim to the Shares is a two-party dispute. |
| f. No cash or income | Yes. Emergent concedes it has no income. And although it may have a claim to cash seized by the Government, it has no access or equitable interest in it—just like it has no access to the Shares. |
| g. No pressure from non-moving creditors | No (BlockFi and Emergent agree). |
| h. Previous bankruptcy petition | Yes. Not only did Emergent's affiliate file bankruptcy in this Court, Emergent itself is *currently* in liquidation proceedings in Antigua. Ex. B-14. |
| i. Prepetition conduct was improper | Yes. Emergent's JPLs filed the Antiguan liquidation proceeding on December 2, 2022—in violation of the BlockFi Automatic Stay and Worldwide Stay Orders. The JPLs knew this; they cited the BlockFi Action as grounds for liquidation. Ex. B-14 ¶ 7. And even after Judge Kaplan explained to Emergent's counsel that the BlockFi Stay Orders applied to the Shares, the JPLs continued filing actions concerning the Shares, including this case. |
| j. No possibility of reorganization | Yes. *See* Part II.A.i., *supra*. There are no assets. Without assets, there is no possibility to reorganize. |
| k. Debtor formed immediately prepetition | No (BlockFi and Emergent agree). |
| l. Debtor filed solely to create automatic stay | Yes. Emergent benefited from the automatic stay by stopping litigation concerning the Shares in the BlockFi Bankruptcy Court. If this case is allowed to proceed, Emergent may seek other litigation advantages not open to it in the BlockFi Bankruptcy Court, such as consolidation with the FTX Debtors. |
| m. Subjective intent of debtor | Yes. The motives in the Barkhouse Declaration are conclusory and—until offered through live testimony in this Court—inadmissible. Instead, all circumstantial evidence suggests this case was brought for a litigation advantage. |

24.     Because the *Primestone* factors indicate Emergent filed its petition in bad faith, the Court should dismiss the case.

### III.     CONCLUSION

25.     The Responses fail not only because they are legally flawed, but also because they are not supported by an iota of evidence. As the party with the burden to prove both that it has eligible property and that it filed in good faith, Emergent's lack of evidence is fatal to its position. Accordingly, BlockFi respectfully requests that the Court dismiss with prejudice Emergent's above-captioned chapter 11 case pursuant to sections 109 and 1112(b) of the Bankruptcy Code. BlockFi further requests all other relief to which it may be entitled.

| | |
|---|---|
| Dated: March 9, 2023 | **MORRIS NICHOLS ARSHIT & TUNNELL LLP** |

/s/  Derek C. Abbott
Derek C. Abbott (No. 3376)
1201 North Market Street, Suite 1600
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbot@morrisnichols.com

and

**HAYNES AND BOONE, LLP**
Richard Kanowitz (admitted *pro hac vice*)
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989
Email: Richard.Kanowitz@haynesboone.com

Richard D. Anigian (admitted *pro hac vice*)
Charles M. Jones II (admitted *pro hac vice*)
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email:  Rick.Anigian@haynesboone.com
          Charlie.Jones@haynesboone.com

*Counsel for BlockFi Inc.*