```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3   IN RE:                     .  Chapter 11
                                .
 4   EMERGENT FIDELITY          .  Case No. 23-10149 (JTD)
     TECHNOLOGIES LTD.,         .
 5                              .
                                .
 6                              .  Courtroom No. 5
                                .  824 Market Street
 7             Debtor.          .  Wilmington, Delaware 19801
                                .
 8                              .  Tuesday, March 14, 2023
     . . . . . . . . . . . . .  .  10:00 a.m.
 9
                       TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE JOHN T. DORSEY
                 UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtor:           Jody C. Barillare, Esquire
13                             MORGAN, LEWIS & BOCKIUS LLP
                               1201 N. Market Street
14                             Suite 2201
                               Wilmington, Delaware 19801
15
                               John C. Goodchild, III, Esquire
16                             MORGAN, LEWIS & BOCKIUS LLP
                               1701 Market Street
17                             Philadelphia, Pennsylvania 19103

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Jermaine Cooper

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1  APPEARANCES (CONTINUED):

2  For the Debtor:          Joshua Dorchak, Esquire
                            MORGAN, LEWIS & BOCKIUS LLP
3                           101 Park Avenue
                            New York, New York 10178
4
   For the U.S. Trustee:    Benjamin Hackman, Esquire
5                           OFFICE OF THE UNITED STATES TRUSTEE
                            844 King Street, Suite 2207
6                           Lockbox 35
                            Wilmington, Delaware 19801
7
   For BlockFi:             Derek Abbott, Esquire
8                           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                            1201 North Market Street
9                           Suite 1600
                            Wilmington, Delaware 19801
10
                            Charles Jones, Esquire
11                          HAYNES & BOONE LLP
                            2323 Victory Avenue, Suite 700
12                          Dallas, Texas 75219

13                          Richard Kanowitz, Esquire
                            HAYNES & BOONE LLP
14                          30 Rockefeller Plaza
                            26th Floor
15                          New York, New York 10112

16 For the Department
   of Justice:              Seth Shapiro, Esquire
17                          U.S. DEPARTMENT OF JUSTICE –
                              CIVIL DIVISION
18                          COMMERCIAL LITIGATION BRANCH
                            P.O. Box 875, Ben Franklin Station
19                          Washington, DC 20044

20 For FTX:                 Brian Glueckstein, Esquire
                            SULLIVAN & CROMWELL LLP
21                          125 Broad Street
                            New York, New York 10004

22

23

24

25

1                              INDEX

2   MOTION:                                              PAGE

3   Agenda
4   Item 1: BlockFi's Motion for Entry of an Order       8
5           Dismissing the Debtor's Chapter 11 Case
            [D.I. 32, filed on February 16, 2023]

6   Agenda
7   Item 2: Debtor's Motion for Entry of an Order (I)
8           Directing Joint Administration of Its Chapter
            11 Case and (II) Granting Related Relief
9           [D.I. 38, filed on February 28, 2023]

10          Court's Ruling:                              39

11

12  RELATED MATTERS:                                     PAGE

13  I. FTX Debtors' Objection to BlockFi's Motion to
14     Strike [D.I. 73, filed on March 13, 2023]

15     Court's Ruling:                                   4

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 10:02 a.m.)

2          (Call to order of the Court)

3              THE COURT:  Please be seated.

4              I will go ahead and turn it over to debtor's

5    counsel to run the agenda -- well, before we begin, on the

6    motion to strike I have read the papers and I am going to

7    deny that motion.  Clearly, the FTX debtors and, by

8    extension, the FTX creditor's committee has standing.  The

9    facts of this case are pretty convoluted, but they can be

10   broken down, I think, fairly succinctly.

11             Emergent claims that it owns certain Robinhood

12   shares. Alameda asserts those shares were purchased with

13   their assets and, therefore, belong to them.  The other FTX

14   debtors assert that Alameda used their assets to purchase the

15   shares and, therefore, they belong to them.  BlockFi asserts

16   it owns the shares by virtue of a pledge agreement whereby

17   Emergent pledged the shares as collateral on Emergent's

18   guarantee of a $600 million loan from BlockFi to Alameda.

19   And Emergent claims that the pledge agreement is invalid and

20   that even if it is valid those shares can be recovered as a

21   fraudulent transfer.

22             It seems pretty clear to me there is standing all

23   around.  So, that motion is denied.

24             In connection with the motion to dismiss I am going

25   to need some help here because it seems to me that -- well,

1   let me backup.  At this point the shares are being held by

2   the Federal Government.  They were seized by the Government

3   in connection with the criminal case against Mr. Sam Bankman-

4   Fried.  If Mr. Fried is convicted, there will then be a

5   process to determine whether the shares are the proceeds of

6   his criminal activity.  And if so, then the shares will be

7   forfeited; however, those asserting an interest in those

8   shares will have an opportunity to participate in the

9   forfeiture proceeding to claim that the shares do not belong

10  to the Government, that they have a superior claim to those

11  shares.

12          Who is going to participate in that proceeding?  Is

13  it going to be BlockFi?  Alameda?  Emergent?  The other FTX

14  debtors?  What is the District Court going to decide?

15          The District Court has exclusive jurisdiction.  So,

16  what is the District Court going to decide?  Is it going to

17  say -- is it going to pick amongst all those entities which

18  one's own the shares or is the District Court just going to

19  say those shares -- the Government does not -- these parties

20  clearly have some interest superior to the Governments, so go

21  back from whence you came, and figure out who amongst you is

22  the one who owns them.

23          Where does it go?  Does it go to the District Court

24  -- excuse me, the Bankruptcy Court in New Jersey where

25  Emergent's bankruptcy is pending, or does it come back here

1 | where FTX's and Alameda's bankruptcy is pending.  All

2 | unanswered questions. I don't know what is going to happen.

3 |         So, everything is up in the air at this point.  So,

4 | I am struggling with why in the world I would dismiss the

5 | case at this point in time.  Those are all unanswered

6 | questions that have to be answered before anybody is going to

7 | know whose assets these are.  And it could turn out that they

8 | are Emergent's, and if they're Emergent's then they have to

9 | be administered here in this Court.  If they are BlockFi's

10 | then they have to be administered in BlockFi's bankruptcy in

11 | New Jersey.

12 |         So, with that I will go ahead and turn it over.

13 | Are we starting with the motion to dismiss?

14 |         MR. BARILLARE:  Good morning, Your Honor.  Jody

15 | Barillare from Morgan, Lewis in Wilmington on behalf of the

16 | debtor.  With me today are my colleagues Josh Dorchak from

17 | New York and John Goodchild from Philadelphia.  Also with us

18 | today is Angela Barkhouse, one of the joint provisional

19 | liquidators.

20 |         THE COURT:  Thank you.

21 |         MR. BARILLARE:  Thank you.

22 |         MR. DORCHAK:  Your Honor, I just wanted to take two

23 | seconds.  Joshua Dorchak of Morgan, Lewis on behalf of the

24 | proposed counsel for the debtors.

25 |         Just to introduce, again, John Goodchild and Angela

1  Barkhouse are potential witnesses today, and also to thank

2  the Court, the Courtroom Deputy, the whole staff for helping

3  us deal with the travel problems we had.  I just want to

4  express our appreciation to everyone including counsel to the

5  other parties for helping us work through those last minute

6  problems.  We managed to make new arrangements, and we're

7  here, and we're ready to go.

8              THE COURT:  Thank you.

9              MR. ABBOTT:  Good morning, Your Honor.  Derek

10  Abbott of Morris Nichols here for BlockFi.

11              Your Honor, Charlie Jones from Haynes & Boone is

12  going to be handling the motion to dismiss.  I believe his

13  *pro hac* has been signed, so I just wanted to introduce him to

14  the Court.

15              THE COURT:  Okay. Thank you.

16              MR. JONES:  Good morning, Your Honor.  Charlie

17  Jones with Haynes & Boone on behalf of BlockFi.

18              I'm happy to proceed however the Court would like.

19  I think it is our motion.  I can make some introductory

20  remarks then move some small pieces of evidence into the

21  record and then let the debtor proceed with its argument, and

22  evidence, and then they can cross-examine the witnesses as

23  they are presented.

24              THE COURT:  All right.  Go ahead -- well, go ahead

25  and do your opening.  I will give the debtors an opportunity

1    to do an opening, and then we will go from there.

2              MR. JONES:  Thank you, Judge.

3              So, we are here on BlockFi's motion to dismiss this

4    bankruptcy under Docket 32.  We move under two independent

5    prongs, Your Honor; one that Emergent has not property in the

6    United States and what I really think is the larger focus of

7    this petition. Its not filed in good faith.  Specifically,

8    under the Integrated case.

9              As you said, this all stems from a two-party

10   dispute that was started when BlockFi filed its bankruptcy

11   and its adversary on November 28th seeking a declaration,

12   among other things, that its pledge agreement with Emergent

13   with valid and enforceable, and sought disposition of the

14   shares.  BlockFi has a secured interest in those shares and

15   that's at Exhibit A-6 through the pledge agreement.

16             Since that time on the 9th of January Judge Kaplan,

17   at a hearing in the adversary proceeding, has found that

18   BlockFi has demonstrated a property interest in those shares

19   and that property interest is protectable under 361, entitled

20   to protection under 361.

21             It is undisputed, as Your Honor said, that the

22   Government has seized the shares and some proceeds from

23   there, about $55 million worth of the shares and $20 million

24   of proceeds from those shares from merits.  The Government's

25   detailed seizure is at Exhibit B-3-1 in Docket 32-3 in this

1  case.

2           So, now we have two courts other then this one that

3  are overseeing the Emergent shares.  As you said, the

4  Southern District of New York District Court in a

5  civil/criminal forfeiture proceeding and the New Jersey

6  Court.  I wish I had a better answer to Your Honor's question

7  what happens in the forfeiture proceeding.  There is just not

8  a lot of authority that we have been able to locate in that

9  regard.

10          Whether the District Court in New York will, as you

11  say, adjudicate whether the Government has superior rights,

12  vis-à-vis other parties, or whether the District Court is

13  actually going to adjudicate the claims amongst the parties

14  in this case including the FTX debtors.  I think that is

15  still up in the air a little bit, Your Honor.

16          THE COURT:  I agree. I think its -- I think the

17  District Court might have a problem with trying to decide

18  amongst various debtor entities, including bringing in issues

19  of fraudulent transfer and preferences.

20          MR. JONES:  I don't disagree with Your Honor.  We

21  have looked at that.  We are still in the process of

22  analyzing those issues and, you know, whether we have to

23  brief them in the Bankruptcy Court in front of Your Honor in

24  either this case or the FTX case, Judge Kaplan in the New

25  Jersey BlockFi action, or the District Court, the other Judge

1  Kaplan.  It is just a little bit unclear right now.

2       What I can say is that there are two actions filed

3  before this case and there is no reason why the validity and

4  enforceability of Emergent/BlockFi pledge agreement should

5  not be litigated in the New Jersey Court if the Southern

6  District of New York Court decides not to take up that

7  action.

8       THE COURT:  That is not the issue in front of me

9  today.  The issue in front of me today is do I dismiss this

10 case.

11      MR. JONES:  I understand, Your Honor.  But you were

12 asking what might happen either way there, but that is how I

13 see that particular issue playing out and whether, you know,

14 BlockFi has a superior right, at least vis-à-vis the pledge

15 agreement, to those shares.  As Judge Kaplan has said, you

16 know, his courtroom is open to litigate those issues and he

17 intends to exercise his jurisdiction in that adversary

18 proceeding over the pledge agreement.

19      I will say the DOJ has not been shrinking violet on

20 these issues. They have contacted counsel for BlockFi.  And I

21 am fairly certain, although I can't swear to it, that they

22 contacted counsel for Emergent, the debtor here, and counsel

23 for the FTX debtors and they have made it clear, at least

24 very clear to us, that they do not want anything in the

25 Bankruptcy Courts, any litigation over these HOOD shares to

1  interfere with the prosecution of Mr. Bankman-Fried in the

2  Southern District of New York.

3        They don't want the litigation over those rights.

4  Particularly they are very much opposed to discovery being

5  taken with respect to the HOOD shares and they have signaled

6  that they don't believe any order of any of these Bankruptcy

7  Courts is going to be binding on the Government with respect

8  to the Emergent shares.

9        THE COURT:  Well, isn't that what you are asking me

10 to do today?  You're asking me to rule that Emergent has no

11 property in the United States because BlockFi owns those

12 shares, right?

13       MR. JONES:  No, sir.  What we are saying is that

14 Emergent has no property in the United States because the

15 property has been seized prior to the bankruptcy filing by

16 the United States Government; meaning that that property is

17 not property of the estate.  I will get to that point in a

18 minute.  We are not asking for dismissal of this case.

19       THE COURT:  Then wouldn't that also mean your case

20 needs to be dismissed in New Jersey because the Government

21 seized -- unless you have other assets, I don't know, maybe

22 you do.

23       MR. JONES:  Yes.  That is a good point, Your Honor.

24 BlockFi has significant other assets and other claims and

25 other real creditors that have to be administered

1   irrespective of the Emergent shares, the HOOD shares.

2   Emergent doesn't, and that is the real difference here.

3   There is no property in the United States other then a

4   retainer that was wired from a litigation fund.

5          Our understanding, in talking to Mr. Goodchild

6   about this, directly to Mr. Goodchild's firm the same day, at

7   least based on what we know in the schedules, the same day

8   this action was filed.  So, that is their basis of their

9   property in the United States.

10          We think, and I can flip to it, that the In Re

11  Thane [phonetic] and the VPH Pharma [phonetic] case are

12  pretty clear that property seized by the Government prior to

13  the filing of the bankruptcy is not property of the

14  bankruptcy estate because they can't use it.  The debtor

15  can't use it, it can't be disposed of, it can't be

16  transferred, its just not there.

17          So, they may have some legal right to it, although

18  we contend that the legal right was transferred when we

19  demanded a merits turnover of the shares pursuant to our

20  power of attorney.  Regardless, they only have some legal

21  right to it.  They don't have equitable right to it.  They

22  can't use it.  They can't pay anybody with it. So, it is not

23  property of their estate.

24          BlockFi would agree to the stay of this proceeding,

25  Your Honor, under the right conditions primarily that the

1  initial claims in the forfeiture proceeding are left to the

2  decision of the Government -- the Court in the Southern

3  District of New York after which time if we need to reopen

4  these various cases to deal with the issues that you have

5  raised in your opening we would be willing to that.  I know

6  we have been in discussions with counsel for the debtor here,

7  counsel for the FTX debtor, and the Government has actually

8  circulated a proposed stipulation.  Everyone is working on

9  comments to that.

10        It has got to be a situation where our adversary is

11  stayed, this case is stayed, the FTX debtors participate in

12  the agreement.  And, you know, we all go to the Southern

13  District of New York for, at least, the initial

14  determinations.

15        THE COURT:  Well, I can guarantee you I'm doing

16  nothing that is going to effect the ownership for those

17  shares.  I am not going to make any rulings one way or the

18  other on who owns those shares.  That is not my decision at

19  this point.  That is up to the forfeiture proceeding int eh

20  Southern District.

21        MR. JONES:  I appreciate --

22        THE COURT:  So, why am I wasting my time here.  Why

23  don't you go out in the hallway, and agree to that, and we

24  can just go -- we will stay this proceeding and we can go our

25  merry way.

1        MR. KANOWITZ:  May I be heard, Your Honor?

2        THE COURT:  Sure.

3        MR. KANOWITZ:  For the record Richard Kanowitz of

4   Haynes & Boone.  We are debtor's counsel, as you are aware –

5   for BlockFi.

6        Thank you, Your Honor.  Thank you very much for

7   that direction because since I've had the initial discussion

8   with the FTX debtors about being a fiduciary to victims,

9   because that is really who is going to get this money.  It is

10  not going to be a corporation, its not going to be FTX

11  debtors, it's not going to be Emergent. Its not even going to

12  be BlockFi.  It is going to be the victims of the fraud.  And

13  the victims of the fraud, if the Government decides it's the

14  FTX debtor's creditors, plus BlockFi creditors, which we

15  believe it should be, that won't be determined by you, by

16  Judge Kaplan, or anyone else.

17       So, from the beginning of the time that we filed

18  our adversary proceeding I have been asking for some

19  fiduciaries to come up and stop the waste of resources both

20  judicial as well as legal.  We have agreed with the DOJ, and

21  this happened before Emergent filed their bankruptcy.  I will

22  just walk you back of what happened.

23       January 9th we had a hearing in front of Judge

24  Kaplan and Judge Kaplan made it clear to the FTX debtors who

25  participated as well as to the JPL's by Morgan Lewis who were

1   just JPL's in Antigua that he had jurisdiction, that the

2   automatic stay under 362 applied, and that his doors were

3   open.  So, he also directed that we needed to file an amended

4   adversary proceeding complaint.  So, we drafted that.

5          Then the Government called us and they said we want

6   to see a copy of that adversary proceeding  complaint.  We

7   shared it to them.  And ensuing weeks happened where we were

8   discussing it and we didn't file it.  We didn't file the

9   amended complaint.  We had it.  The Government made it very

10  clear to us filing the amended complaint, which would raise

11  all of the issues that we are highlighting at the beginning,

12  would be two problems for them:

13         One, an interference with criminal prosecution of

14  Sam Bankman-Fried because all of the witnesses on the

15  FTX/Emergent side are either indicted, plead guilty, or

16  something is going to interfere with the prosecution itself.

17         Second, the determination of any of the merits on

18  the validity of the BlockFi pledge and guarantee are going to

19  be raised in the forfeiture proceedings, nowhere else.  They

20  will come down on everybody either through contempt sanctions

21  or otherwise to handle anybody's attempt to try to move the

22  cases forward.

23         With that knowledge we went to our client and we

24  said, okay, this is what we are going to do.  We are going to

25  file the amended complaint and we're going to seek a stay,

1  okay, stay of the adversary proceeding complaint.  Why were

2  we going to do that; Judge Kaplan directed us to file an

3  amended complaint, we didn't want to violate his ruling.  We

4  didn't want to fight with the DOJ about where these issues

5  should be decided after we did all of the case law that Your

6  Honor knows and has read in our brief to stop the madness.

7        Why fight if we are not going to get a resolution.

8  We are fiduciaries.  We have creditors who are owed over a

9  billion dollars.  We have a billion dollars tied up in FTX's

10  bankruptcy case.  So, we agreed to stay.

11        Now what happened, Emergent filed bankruptcy.  So,

12  they get the benefit of the (indiscernible).  I told Judge

13  Kaplan this yesterday, and I said exactly what would happen

14  that if Your Honor dismissed this case we would file the

15  amended complaint and we would seek to stay that pending

16  determination of the forfeiture proceeding.

17        My understanding is that while I have had multiple

18  agreements with the DOJ to proceed that way, Emergent hasn't

19  agreed and especially the FTX debtors don't agree.  We

20  drafted the stipulation.  We gave it to Mr. Goodchild.  He

21  sent back a copy.  Couldn't read it just yet because we're in

22  the midst of this litigation and we have, you know, Silicon

23  Valley Bank and other issues that popped up over the weekend.

24  The point is we understand that the FTX debtors won't sign

25  it.

1           Now there is no doubt that in the FTX bankruptcy

2  case BlockFi will come to Your Honor at some point and say we

3  have claims against them, but we don't have to argue over the

4  HOOD shares and whether we're a secured creditor on those

5  shares.  We have other collateral and one day we will do that

6  when Your Honor submits a bar date.

7           The determination of the validity of the pledge or

8  security of the HOOD shares, whether it be against Alameda or

9  against Emergent, doesn't need to be decided and shouldn't be

10 decided.  And if we try to decide it the Government is going

11 to do things to all of us.

12          So, again, I harken back, you ask why dismiss the

13 case you don't have to if you stay everything.  If we don't

14 get stuck with a claims objection process where we have to

15 come to this Court and then potentially ask Your Honor to

16 stay that claim objection process they have to come to our

17 Court if they want to lift the automatic stay to allege

18 fraudulent transfer litigation.  They can't just sue us in

19 your Court.  They have to come to Judge Kaplan.

20          Why go through all of those resources for the

21 detriment of the victims of the fraud.  Why don't we just

22 stay everything, put placeholders in each other's Court if we

23 have to that doesn't prejudice anybody's rights and let's see

24 what happens in the Southern District of New York either

25 through the prosecution or the forfeiture.

1          I suspect that the DOJ at the end of the process,

2    many years from now, when some estate fiduciary from BlockFi,

3    or Emergent, or FTX stands up they may say I don't want to

4    hear you guys.  We have victims that we are going to

5    compensate.

6          So, I would say, Your Honor, yes, we should stop

7    the madness and we should enter a stipulation that doesn't

8    create prejudice to anybody's rights, doesn't drain resources

9    and allows both BlockFi because, like Mr. Jones said, we may

10   sell our platform.  Emergent is in a HOOD share is a

11   microscopic issue.  Important, but its not going to change

12   whether BlockFi emerges from bankruptcy or not.  It will

13   change whether our creditors get a huge distribution because

14   there's $500 million at stake and we're owed a billion

15   dollars from Emergent, Alameda, and BlockFi.

16         So, I would agree with Your Honor.  We should stop,

17   we should stay, we should agree to proceed as fiduciaries to

18   protect clients.

19         THE COURT:  Let me hear from the debtors on this

20   stay issue.

21         MR. DORCHAK:  Your Honor, if we're going to hear on

22   this subject --

23         THE COURT:  You can come up to the podium.

24         MR. DORCHAK:  Joshua Dorchak again, Your Honor.

25         My partner, John Goodchild, is the person who has

1  been having the conversations on our side including

2  conversations with BlockFi's counsel.  So, if you don't mind,

3  Your Honor, we are saving the legal argument and the formal

4  presentation for later.  I will let him, sort of, give the

5  counter.

6          THE COURT:  Well, if we even get there today

7  because I might just tell you to go away and work this out,

8  and come back.

9          MR. DORCHAK:  One step at a time, Your Honor.  Can

10 John Goodchild --

11          THE COURT:  Yeah, absolutely.

12          MR. GOODCHILD:  Your Honor, John Goodchild, Morgan,

13 Lewis, on behalf of the debtors.  Good morning.

14          THE COURT:  Go ahead.

15          MR. GOODCHILD:  A few things.  First, part of what

16 has been going on has been driven by BlockFi's aggressive

17 moves.  You heard part of that story, but what wasn't said

18 was we, on behalf of Emergent, reached out to BlockFi

19 immediately after BlockFi raised the issue back in December

20 and had a conversation in which we discussed not having

21 litigation and having an exchange of information.  We thought

22 we were on our way to a constructive conversation along those

23 lines.  That is one.

24          Two, we, on behalf of Emergent and on behalf of the

25 Joint provisional liquidators, asked BlockFi and the New

1  Jersey Bankruptcy Court for more time to respond to the

2  litigation that BlockFi brought and BlockFi objected to that,

3  and hauled us to Trenton New Jersey only to have Judge Kaplan

4  give us the time we were asking for.

5        Then, after that the Department of Justice did get

6  in touch with us and did express the concern that litigation

7  between the parties -- and, Your Honor, I'm emphasizing the

8  word "litigation" because we have a Chapter 11 bankruptcy

9  before you today versus an adversary proceeding in a Chapter

10 11 bankruptcy in New Jersey.  The DOJ's concern, as expressed

11 to us, was litigation between the parties in the various

12 bankruptcy courts would interfere with the prosecution.  And

13 they expressed a much narrower concern then Mr. Kanowitz

14 expressed.

15       When the DOJ articulated those concerns in a draft

16 stipulation quite recently those concerns were expressed in

17 terms of preventing the litigation toward a judgement on the

18 very thing Your Honor has already said Your Honor is not

19 willing to do which is adjudicate who has rights in and who

20 has superior rights in the HOOD shares.  That is not before

21 you today, Your Honor.

22       The issue is one that has been talked about among

23 the parties.  It is true, Mr. Kanowitz sent me a proposed

24 stipulation that was a re-write of the DOJ's on Saturday

25 morning. It is true that I worked very hard to come up with

1   what I thought we could live with and sent that back to him

2   on Sunday.  It is also true, Your Honor, that in a

3   conversation with Mr. Kanowitz on Sunday I asked him if he

4   would withdrawal the motion to dismiss the Chapter 11 because

5   where he, himself, thinks things are headed is that whether

6   Emergent is in bankruptcy or not is not really the central

7   issue with respect to the HOOD shares.

8           So, my comment to Mr. Kanowitz was why put

9   everybody through the trip to Wilmington.  Why have Angela

10  Barkhouse get on a plane from the Cayman Islands to come up

11  here to testify.  Why do all for that.  Why not just

12  withdrawal.

13          Mr. Kanowitz, who has said to you he is primarily

14  concerned about stopping the madness and keeping the

15  attorney's fees down, said, no, we're going forward on

16  Tuesday.  So, here we are.

17          And before I pass the podium I should also mention

18  that part of the reason why Emergent filed for bankruptcy is

19  that BlockFi and Sam Bankman-Fried have been agitating and

20  litigating in Antigua.  So, at the very same time that

21  BlockFi is litigating in New Jersey forcing Emergent to spend

22  resources there, BlockFi is throwing in with Sam Bankman-

23  Fried in front of the High Court in Antigua forcing the JPL's

24  to spend money to remain in control of the company so that

25  Sam Bankman-Fried doesn't get control.

1          All of which I have found no reason to say to Your

2   Honor until Mr. Kanowitz just did what he just did which I

3   found to be extraordinary.  So, Your Honor, nobody here is

4   standing in the way of trying to reach a deal that would

5   limit the litigation.

6          I don't think staying a Chapter 11 is the right

7   answer.  My personal view is, the Chapter 11 should continue;

8   my personal view is, the Chapter 11 should be administered as

9   efficiently as possible -- and we have a motion on for that

10  today as well -- and personal view, Your Honor, is the deal

11  that should be reached by the parties should be one in which

12  the parties don't interfere with the criminal prosecution,

13  but the parties do exchange information, so that when the

14  time comes in front of the appropriate court to hash out

15  which entity should be representing the HOOD shares at the

16  hypothetical table around what happens next, that we all have

17  the same fact set and we're prepared to have that litigation,

18  wherever it happens, as efficiently as possible.

19          Thank you, Your Honor.

20          THE COURT:  So what else is there to do in this

21  Chapter 11, other than joint administration, which is on for

22  today, what else is there?  What other assets does Emergent

23  have that need to be administered at this point?

24          MR. GOODCHILD:  Emergent doesn't have any other

25  assets to be administered, that's true, Your Honor, but there

1   is a very significant question with respect to who is a

2   legitimate creditor of Emergent, separate and apart from the

3   BlockFi issue.

4         Your Honor mentioned that FTX has a claim, that's

5   an intercompany and we can deal with that without the bar

6   date process, but you can see -- if you read in Angela

7   Barkhouse's affidavit, the whole reason the Antiguan

8   proceeding came to be in the first place was the submission

9   of the claim by a creditor who is also a customer of FTX.

10  And the allegation is that that customer can trace assets

11  stolen from that customer's account through Alameda into the

12  HOOD shares.

13        Figuring out whether that creates a claim against

14  Emergent and whether there are other people out there who are

15  similarly situated, that is something that could legitimately

16  be done efficiently in the Chapter 11 process.

17        THE COURT:  Well, that's still going to affect the

18  issue of who owns those shares and that is something I'm not

19  prepared to do until the forfeiture proceeding is terminated

20  in New York.

21        MR. GOODCHILD:  Your Honor, I certainly understand

22  what you're saying, but I guess I am a little confused.  I

23  would have said, understanding who the creditors are of

24  Emergent puts Emergent in a position to be able to talk about

25  why it has rights in whatever proceeding comes next with

1  respect to the shares.

2          In other words, I anticipate that one of the

3  things that will be important in that proceeding, whether

4  it's in the Southern District of New York or elsewhere, is

5  who are the entities and whose interests do they really

6  represent.  It's one thing if Emergent is just a proxy for

7  FTX, I mean, it's another thing if Emergent is just a proxy

8  for BlockFi, but it's a third thing and a much different

9  thing, I would expect, if Emergent stands as the proxy for

10 creditors who are themselves victims who would not otherwise

11 be claiming and collecting through the FTX estate.

12         So, Your Honor, with respect, I actually think the

13 question of who Emergent's creditors are has a bearing on

14 Emergent's role down the line.

15         THE COURT:  Well, to the extent you're saying you

16 want to exchange information so that the parties are prepared

17 to make those arguments when the time comes, I don't have an

18 issue with that, but to the extent you're telling me you want

19 me to rule on those issues, I'm hesitant to do that.

20         MR. GOODCHILD:  I think I'm saying the first thing

21 you said, absolutely, which is, I do think there should be a

22 forum for exchange of information.  I think being in Chapter

23 11 helps with that and that's one of the reasons why we

24 filed.  But I'm also saying knowing who comes forward to

25 claim an interest as a creditor is itself important, not the

1  act of asking Your Honor to adjudicate those claims, that --

2  we have a lot of time for that -- it's more the act of

3  understanding who thinks they are a creditor and why, and the

4  mere submission of claims I don't think would interfere with

5  the DOJ or the criminal prosecution in any way.

6          THE COURT:  So who else is claiming to be a

7  creditor of Emergent other than BlockFi --

8          MR. GOODCHILD:  FTX?

9          THE COURT:  -- that you're aware of right now --

10  and FTX, okay.

11          MR. GOODCHILD:  What I'm aware of is FTX; Alameda;

12  Mr. Ben Shimon (ph), who is the petitioning creditor in

13  Antigua.  There may be other people who have come forward and

14  identified themselves to the JPLs because, remember, there

15  was an Antigua proceeding, so the JPLs may be getting inbound

16  that I'm not aware of.  But my view is that, because of the

17  way that Ben Shimon claims an interest, it's reasonable to

18  believe that others could claim a similar interest.

19          THE COURT:  All right.  Let me ask, before I go

20  back to Mr. Kanowitz, I see Mr. Shapiro is on the line for

21  the Department of Justice.

22          Does the DOJ have any position on this issue, Mr.

23  Shapiro?

24          MR. SHAPIRO:  Good morning, Your Honor, Seth

25  Shapiro for the United States.  The Government is not taking

1  a position on the motion to dismiss, Your Honor; however, we

2  would encourage an exchange of information among the parties,

3  but we agree with the Court that the criminal forfeiture

4  proceeding and the criminal trial should be concluded so that

5  the Southern District of New York can adjudicate these

6  issues.  And if the District Court in its view decides to

7  transfer any of these issues or assign them back to a

8  Bankruptcy Court, I think Your Honor is correct that we

9  should leave that to the District Court to decide.

10         THE COURT:  Do you have an issue, Mr. Shapiro, if

11  the debtors, for example, were to -- the Emergent debtors I'm

12  talking about -- there are so many debtors involved here --

13  if the Emergent debtors were to proceed with setting a bar

14  date so that they could receive proofs of claim, so they know

15  who all their alleged creditors are, is that an issue the DOJ

16  would have a concern about?

17         MR. SHAPIRO:  Well, I can't speak for the Office

18  of the U.S. Trustee, I don't work for them, but as far as the

19  criminal prosecutors are concerned, I mean, there's been a

20  bar date set in the FTX bankruptcy, there's been a bar date

21  set in the BlockFi case.  So I do not have an issue with a

22  bar date being set in this case.  However, you know, the

23  Court should keep in mind, as I think the parties intimated

24  that, under 21 U.S.C. 853, the exclusive jurisdiction for

25  determining who has the interests in the shares and the funds

1   at issue is the District Court, it is not this Court or any

2   other Bankruptcy Court.

3          THE COURT:  Do you have any insight on what the

4   District Court might do with regard to when we have multiple

5   parties claiming that they are the owners of the the asset,

6   what's going to happen?  Is the District Court going to

7   decide between the multiple parties who has the right claim

8   or are they going to send it back down to the Bankruptcy

9   Courts?

10          MR. SHAPIRO:  The information I have from the

11  criminal prosecutors, Your Honor -- I'm bankruptcy attorney

12  for the Government, but the criminal prosecutors have

13  indicated that they believe that the Southern District of New

14  York will adjudicate all of these issues related to the

15  criminal forfeiture.

16          There was some comment made earlier, I think, by

17  counsel for BlockFi that this was going to be a civil

18  forfeiture; that is not the plan.  There is some hypothetical

19  academic possibility it could be, but down the road -- but,

20  more likely than not, it is going to be a criminal forfeiture

21  and all these issues will be adjudicated by the U.S. District

22  Court for the Southern District of New York, which is

23  currently pending before Judge Kaplan.

24          THE COURT:  Okay.  Thank you, Mr. Shapiro.

25          MR. SHAPIRO:  Thank you.

1          THE COURT:  Does the U.S. Trustee have a position?

2          MR. HACKMAN:  Good morning, Your Honor.  May it

3   please the Court, Ben Hackman for the U.S. Trustee.

4          I don't know that we have a position on this

5   point.  I think we would want to defer to Mr. Shapiro as a

6   Government partner about the propriety of establishing a bar

7   date to receive proofs of claim in Emergent's case.  At this

8   point, I think that's all I would submit to Your Honor.

9          THE COURT:  Okay.  Thank you.

10         MR. HACKMAN:  Thank you.

11         THE COURT:  Let me hear from --

12         MR. GLUECKSTEIN:  Your Honor, may I be heard?

13         THE COURT:  -- the FTX debtors.  Go ahead.

14         MR. GLUECKSTEIN:  Good morning, Your Honor.  For

15   the record, Brian Glueckstein, Sullivan & Cromwell, on behalf

16   of the FTX debtors.

17         To address a few of the points here from Mr.

18   Kanowitz's speech, Your Honor, from our perspective, I think

19   the Court summarized the situation correctly at the outset.

20   There are competing claims between the parties as to

21   ultimately who should be the beneficiary of the Robinhood

22   shares that have been seized.  But let's be clear, everything

23   that has happened up until today with respect to attempting

24   to litigate the rights prematurely of those shares has been

25   driven by BlockFi.  They have filed an adversary proceeding

1  on the first day of their case, they have repeatedly tried to

2  drag everybody to New Jersey, and have taken the position --

3  we heard it this morning -- that this is a two-party dispute;

4  despite Your Honor's comments that preceded it, it is not.

5         The questions, we think, are relatively

6  straightforward in terms of once we get into litigation that

7  BlockFi does not hold the position that it holds, that's

8  obviously for another day.  I think Your Honor is correct

9  that nobody here right now knows whether the Southern

10  District of New York is going to adjudicate not just the

11  questions as between creditor versus the Government, but the

12  inter-creditor disputes, or whether those ultimately will

13  come back before either this Court or Judge Kaplan in New

14  Jersey.

15         It will not surprise you, as Your Honor knows, we

16  believe vis-a-vis the FTX debtors that those issues should be

17  litigated before Your Honor, that these issues implicate the

18  rights of many, if not all, of our millions of creditors.

19         But we do not have an issue and have never taken

20  an issue with needing to litigate the rights with respect to

21  the Robinhood shares now; we would be okay with putting that

22  off.  We have, despite Mr. Kanowitz's characterizations --

23  and we haven't spoken directly to him on this topic, but we

24  have talked to the Government, and Mr. Shapiro and his

25  colleagues, and conveyed our views as to what would work.

1 But, in a nutshell, Your Honor, we have to be sure -- nobody

2 knows better than Your Honor as to the issues that the FTX

3 debtors are facing.

4       It was described a few moments ago that this issue

5 is a microscopic issue in the BlockFi case; I don't know what

6 that makes it here then.  It's $500 million, but we have much

7 bigger issues that we need to address before Your Honor in

8 the FTX cases and we need those cases to be able to proceed,

9 and so any stay needs to be narrowly tailored to simply the

10 adjudication of the respective rights between the Robinhood

11 shares and any related discovery on that particularized

12 issue.

13       And one of the big problems that we have is some

14 sort of general discovery bar.  And we've conveyed that to

15 the Government and we don't believe that ultimately will be

16 an issue, but, as Your Honor knows, the fact that numerous

17 witnesses are going to testify in Mr. Bankman-Fried's trial

18 cannot prevent what we need to do as the FTX debtors progress

19 in the cases in this Court and the Government understands

20 that, we're in contact with the Government regularly.

21       And so the question today that was presented was

22 driven by BlockFi.  Again, they moved to dismiss Emergent's

23 case.  Emergent filed a case, ostensibly, to preserve assets

24 and, importantly, Your Honor -- and it was referred to by

25 counsel for the debtor -- Mr. Bankman-Fried is proceeding in

1  Antigua to try to take back control of Emergent.  That is a

2  problem for us.

3           We certainly welcome, as we said in our papers,

4  this filing from the perspective of it put a stay in place,

5  it stopped the unnecessary litigation -- it didn't start it,

6  it stopped it.  Mr. Kanowitz talks about how he wants to stop

7  the waste of resources.  They're the ones that filed a motion

8  to strike our pleading and made us respond to it on the idea

9  that we didn't have standing, which Your Honor addressed at

10  the outset of this hearing.  So the idea that BlockFi is the

11  party who's here trying to come up with a rational path

12  forward is disingenuous.

13          From our perspective, Your Honor, I hear you loud

14  and clear that Your Honor is not going to address the

15  ownership issues prior to the criminal trial and those

16  issues, I think, certainly can be put to the side.  But I

17  think, from our perspective, having the Emergent case

18  pending, having Your Honor overseeing all of the issues

19  relating to the FTX debtors, to the extent there are any

20  issues to address with respect to Emergent, makes sense, but

21  certainly we don't need to be proceeding with figuring out

22  the questions between us and BlockFi and Emergent on the

23  Robinhood shares today.

24          Thank you, Your Honor.

25          THE COURT:  All right, here's what I want to do.

1  Clearly, there's some tension between the parties involved in

2  this case and I want you to take a break now.  My view is, as

3  I've said, I am not going to make any ruling at all that will

4  affect the ownership issue of the Robinhood shares, that's

5  completely off the table.  I agree that there needs to be an

6  exchange of information and I agree that Emergent needs to

7  have the ability to go forward with at least the bare minimum

8  of what is required in the Chapter 11 to find out who's going

9  to claim to be a creditor of their estate, and just filing a

10  proof of claim to say they're a creditor doesn't have any

11  impact on the ownership of those shares.

12           So, with that, with that guidance, I'm going to

13  ask the parties to go talk.  You can go in the hallway for a

14  little bit.  You can let me know whether there's a potential

15  deal or whether there's not.  If there is a potential deal,

16  I'll send you home and see if you can come up with a

17  stipulation; if there's not a potential deal, then we'll go

18  forward with the hearing on the motion to dismiss.  Okay?

19           All right, we'll recess.  Just let chambers know

20  when you're ready.

21       (Recess taken at 10:44 a.m.)

22       (Proceedings resumed at 11:35 a.m.)

23           MR. KANOWITZ:  Your Honor, Richard Kanowitz,

24  Haynes and Boone, counsel for the BlockFi debtors and

25  debtors-in-possession.

1    We want to thank Your Honor for giving us the time

2 to try to work through what the next steps are in connection

3 with this case and the litigations that we have before you.

4 I am hopeful that we are ultimately going to satisfy Your

5 Honor that, at least for today, we have made progress.  And I

6 want to thank counsel for Emergent, as well as counsel for

7 the FTX debtors, for undertaking the time we spent to

8 constructively figure out, as we should as fiduciaries, the

9 right way forward to get the most value for all our

10 constituencies one day.

11    So, with that, Your Honor, what we'd like, subject

12 to Your Honor's approval, of course, is the following.  We'd

13 like to use April 12th, which is the omnibus hearing in

14 Emergent and I believe the FTX case, for a status conference,

15 a status conference on whether or not we've accomplished what

16 we seek to do, which is to enter a stipulation which

17 basically shuts down any and all litigation concerning the

18 HOOD shares and the requisite collateral from the HOOD

19 shares.  Obviously, the language we attempt to do that will

20 have many permutations and I think we're all, I think,

21 diligent enough and smart enough to get to that deal before

22 April 12th.  If we don't get a deal by April 12th, we're

23 going to come to Your Honor potentially a couple days earlier

24 with drafts of what each side believes should be the path

25 forward for a true and complete stay with no gotchas.

1        And that's the issue, right?  No gotchas.  No

2  filing claims within claim objections that raise the same

3  issue, no filing different types of proceedings and then

4  using HOOD as a weapon.

5        So our view is we're going to get to a

6  stipulation, it's going to drive the path forward for the FTX

7  debtors, the BlockFi debtors, as well as Emergent, and

8  hopefully that gets done by April 12th.  Each estate will

9  ultimately have their court approve it.  I mean, we have a

10 creditors committee who's very vocal in our case, represented

11 by Brown Rudnick and others, and we're going to have to pass

12 that through, but we're hopeful that each estate will come to

13 a resolution that Your Honor will ultimately approve in

14 connection with Emergent and FTX and Judge Kaplan will

15 approve in connection with BlockFi.

16       As to today's proceeding, Your Honor, we've heard

17 from Emergent, they would like us to withdraw the motion, and

18 we are willing to withdraw the motion without prejudice.  But

19 what we said to the parties, subject, again, to Your Honor's

20 approval to allow us to withdraw it without prejudice, is if

21 we're not making progress, we're going to re-file this for

22 the May omnibus hearing here in Emergent because that is just

23 an utter failure of all of us to our constituency.

24       And, look, we understand what Your Honor said.

25 While we don't necessarily have to debate the merits of

1  having Emergent exist for purposes of claim process, but

2  we'll address that if we ever have to, but the bottom line is

3  my goal for my client and their constituencies is to stop the

4  bleeding relative to HOOD.  And we recognize we're going to

5  come back to Your Honor in connection with FTX, our issues

6  with FTX on other things other than HOOD.

7        So we'll see where we are and we're hopeful that

8  Your Honor will agree that that should be the path forward

9  for today.

10        THE COURT:  All right.  Let me hear from debtors.

11        MR. GOODCHILD:  Your Honor, John Goodchild on

12  behalf of the debtors -- or debtor, Emergent.

13        The way I understand it is very much as what was

14  said with a couple of additions.  First, and most

15  importantly, the motion to dismiss will be withdrawn.  If it

16  is to be re-filed, obviously, BlockFi is within its rights to

17  make whatever filing it wishes, but the motion is withdrawn,

18  number one.

19        Number two, I believe the agreement is BlockFi

20  also withdraws whatever objection it has to the joint

21  administration motion.  So that, if Your Honor sees fit to

22  rule on that today, the way is clear in that regard.

23        It is true, the parties agreed the April 12 omni,

24  if Your Honor is willing to hold a status, the parties would

25  like that.  It is also true the parties have talked about, if

1  they're having difficulty with an issue or two, submitting

2  either competing drafts or a description of where their

3  disagreements are to Your Honor in the hopes that Your Honor

4  might be able to help us get over the line if we're just that

5  close.  But for today's proceedings, the most important is

6  that the motion to dismiss is withdrawn and the objection to

7  the joint administration is withdrawn.

8            THE COURT:  All right.

9            MR. GOODCHILD:  Thank you, Your Honor.

10            THE COURT:  Thank you.

11            FTX?

12            MR. GLUECKSTEIN:  Thank you, Your Honor, Brian

13  Glueckstein, Sullivan & Cromwell, for the FTX debtors.

14            We agree, we do think there's a path forward.

15  Hearing Your Honor this morning and appreciate Your Honor's

16  guidance on what the Court is and is not going to do prior to

17  the criminal trial, I think that makes good sense.  I agree

18  with Mr. Kanowitz that we should be able to reach a

19  stipulation that deals with that issue.

20            Of great import to us, as I noted in my remarks

21  earlier, is making sure that this is limited to the Robinhood

22  shares issues and doesn't collaterally, or intentionally or

23  unintentionally, impact things we need to do in the FTX

24  debtors' case or claims we need to assert against BlockFi on

25  other issues, as they have claims against us and we certainly

1    have claims against them.

2              I think the April 12th date for a status makes

3    sense.  I would hope that we're able to get something done

4    before then.  Of course, it will need to be reviewed by the

5    Government, both the United States Trustee and the Department

6    of Justice will need to see it, but we expect that that

7    timeline should work.

8              Thank you.

9              THE COURT:  All right, thank you.

10             Does anyone else wish to be heard?

11        (No verbal response)

12             THE COURT:  All right.  Well, I think the

13   resolution for today is a good one.  The parties should meet

14   and confer and submit a form of order withdrawing the motion

15   to dismiss without prejudice and setting April 12th as a

16   status conference, and giving the parties the opportunity to

17   make submissions ahead of that conference, if necessary.  I

18   assume they would be submitted simultaneously.

19             And we'll go from there.  We'll see where we are

20   on April 12th.

21             I appreciate the parties taking the time to

22   address the issue and coming up with at least a temporary

23   resolution.  We'll see how it all works out in the end, but

24   I'm glad to see we were able to get something done today.

25             Yes, sir?

1              MR. DORCHAK:  If I may, Your Honor, just to

2    clarify, the motion for administration, we've filed a revised

3    interim order for the Court's approval.  I don't think

4    there's any objection to that.  That interim order will

5    provide for noticing to go out both in the Emergent case and

6    in the FTX case, so that the entire FTX universe will know

7    and have an opportunity to protest, if they want to, and then

8    -- assuming nothing of that sort -- then would come back and

9    present a final order.

10             I assume that's okay with everyone because the

11   objection has been withdrawn, but I just want to make sure.

12             Thank you.

13             MR. KANOWITZ:  Again, for the record, Richard

14   Kanowitz, Haynes and Boone.

15             Your Honor, our -- we filed a limited objection

16   just for purposes of saying the joint administration motion

17   can't wag the motion to dismiss, right?  Just because there's

18   a joint administration doesn't mean Your Honor can't dismiss

19   it.

20             So, yes, we withdraw the limited reservation of

21   rights or whatever we filed in connection with the joint

22   administration and whatever the proposed order is that the

23   debtor of Emergent worked out with the U.S. Trustee and

24   others, we're not standing in that way, we will fall onto

25   whatever rights we have as a noticed party there.

1            THE COURT:  All right, thank you.  I did review it

2    and reviewed the revised order.

3            Does anyone else wish to be heard on the joint

4    administration order?

5        (No verbal response)

6            THE COURT:  All right, I'm satisfied that that

7    relief is appropriate, I will enter that interim order and,

8    if need be, obviously, it's only an interim order, so maybe

9    at the April 12th hearing we can see where we are and maybe

10   use that as the final hearing if we're resolved on all the

11   other issues.  Okay?

12           MR. KANOWITZ:  Thank you.

13           THE COURT:  All right, anything else for today

14   before we adjourn?

15       (No verbal response)

16           THE COURT:  All right.  Thank you all very much, I

17   appreciate it.  We are adjourned.

18           COUNSEL:  Thank you, Your Honor.

19       (Proceedings concluded at 11:43 a.m.)

20

21

22

23

24

25

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.


/s/ Tracey J. Williams                    March 14, 2023

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable


/s/ Mary Zajaczkowski                     March 14, 2023

Mary Zajaczkowski, CET-531

Certified Court Transcriptionist

For Reliable